**FEDERAL TRADE COMMISSION,**
**Plaintiff/Appellee,**

v.

**ALASKA LAND LEASING, INC., et al., Defendants.**

**and**

**Sheldon JAFFE, Receiver/Appellee,**

v.

**Malcolm KELSO and Gregory Wilson,**
**Respondents/Appellants.**

No. 85–6129.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 4, 1986.

Decided Sept. 8, 1986.

Kirk S. Rense, Los Angeles, Cal., for plaintiff/appellee.

Gilbert Eisenberg, San Francisco, Cal., for respondents/appellants.

Before GOODWIN, TANG and FLETCHER, Circuit Judges.

TANG, Circuit Judge:

Appellants Malcolm Kelso and Gregory F. Wilson appeal from an order in which the district court imposed sanctions against them for multiplicitous litigation under 28 U.S.C. § 1927. Wilson argues that his due process rights were violated because he was not given notice before the sanctions were imposed. Kelso argues that § 1927 sanctions cannot be ordered against him because he is a non-attorney and not otherwise admitted to practice before the court. Kelso and Wilson further submit that on the merits the district court erred in ordering sanctions against them. We vacate the district court's judgment and remand.

FACTS

On July 23, 1984, the Federal Trade Commission (FTC) filed a complaint for injunctive and other equitable relief against defendants Alaska Land Leasing (ALL), Federal Lease Filing Corporation (FLFC), Anchorage Research and Management Company, Tundra Oil, Inc., David Kane and other individual defendants. The FTC alleged, *inter alia*, that during the course of selling oil and gas leases, defendants falsely represented the potential for finding oil and gas in the leased areas.

Pursuant to an FTC request, the district court appointed Sheldon Jaffe permanent receiver over FLFC and David Kane. The Receiver assumed exclusive control over a large number of documents belonging to FLFC and David Kane.

Appellant Malcolm Kelso is a financial consultant employed by the attorneys for David Kane and FLFC. Appellant Gregory

F. Wilson was counsel for FLFC—but was no longer counsel for David Kane—during the transaction relevant to this appeal.

In October 1984, and again in January 1985, Kelso was given access by the Receiver to review the various documents of FLFC and David Kane. In April, 1985, Kelso again requested access to documents under the Receiver's control. The Receiver gave approval, but required that a staff member be present during Kelso's review of the documents. This same requirement applied to all other parties in the case, including the FTC. Kelso agreed to reimburse the Receivership Estate for the cost of providing such a staff person at $10 per hour. Kelso further agreed to provide an advance payment of $400 for the first 40 hours of that staff member's time.

On April 23, 1985, Kelso provided the Receiver with a check in the amount of $400 as agreed, and on that same date, Kelso and his staff commenced copying documents. The next day Kelso advised the Receiver that he was dissatisfied with the arrangement because the staff person assigned by the Receiver was merely present during the copying of the documents and was not assisting him; that he, Kelso, understood the staff person's assistance to be a condition of the agreement.

The Receiver replied that he felt it inappropriate to have a staff member from the Receivership Estate assist one of the parties to the action, that such assistance would compromise the integrity of the Receivership, and that if Kelso was dissatisfied with the arrangement, Kelso could terminate it and pay for one day only. Kelso continued copying the documents, and the Receiver deposited the $400 check.

Shortly thereafter, Kelso contacted Michael Dennison, a representative of National Union Fire Insurance of Pittsburgh, the insurance carrier. Dennison told Kelso that without a court order, payment to the Receiver would not be a reimbursable expense. Kelso also contacted Gregory Wilson, an attorney for FLFC, informed him of the problem, and requested him to take the problem to the district court.

On April 26, 1985, Kelso signed and delivered a letter to Mr. Wilson for conveyance to the Receiver. In that letter, Kelso outlined the disagreement, noted his conversation with the insurance carrier, and advised the Receiver that counsel for Mr. Kane[1] instructed Kelso to stop payment on the check given to the Receiver, and that a stop payment order had been executed. Attached to this letter was a second check for $400, paid to the order of the Receiver, the negotiation of which was conditioned upon the resolution of the issue by the district court.

The Receiver did not receive the letter until May 1, 1985. During the intervening five days, Kelso's staff continued to copy documents.

On May 2, 1985, the Receiver filed an *Ex Parte* Application for Order to Show Cause why Malcolm Kelso and Gilbert Eisenberg should not be required to pay the Receivership Estate: (1) The sum of $340.00; (2) Attorney fees and costs of $3,000; and (3) sanctions as the court may impose including punitive damages of $10,000. In a response filed before the hearing on the Application for Sanctions, the Receiver abandoned its request for relief against Eisenberg after Eisenberg informed the Receiver that he had not authorized the stop payment order.

On June 17, 1985, the district court heard the Receiver's *Ex Parte* Application for Sanctions. The district court granted in part the Receivers' Application for Sanctions. The district court found Kelso and Wilson jointly and severally liable, and directed them to pay the Receiver costs of $340 and the Estate's attorney fees of $2,500 incurred in prosecuting the Application. The court based its order on the following four findings: (1) Wilson and Kelso are subject to sanctions pursuant to 28 U.S.C. § 1927; (2) an agreement existed between Kelso and the Receiver; (3) Kelso

---

1. Mr. Kelso apparently meant Wilson, counsel for FLFC. Gilbert Eisenberg, Kane's present attorney, had replaced Wilson as Kane's counsel by that time.

reneged on the agreement; and (4) the requirement that Kelso pay the Receiver $10 per hour to gain access to the documents in the possession of the Receiver is not discriminatory treatment.

DISCUSSION

■ A district court's award of sanctions is reviewable for abuse of discretion. *United States v. Associated Convalescent Enterprises, Inc.*, 766 F.2d 1342, 1345 (9th Cir.1985). The factual findings upon which a district court bases an award of sanctions are reviewed under the clearly erroneous standard. *Id.*

I. *Fair Notice*

■ The Supreme Court has cautioned that "sanctions ... should not be assessed lightly or without a fair notice and an opportunity for hearing on the record." *Roadway Express Inc. v. Piper*, 447 U.S. 752, 767, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980). Notice before the imposition of sanctions may be actual or constructive. *See Eash v. Riggins Trucking, Inc.*, 757 F.2d 557, 571 (3d Cir.1985). Due process further requires that parties subject to sanctions have "sufficient opportunity to demonstrate that their conduct was not undertaken recklessly or willfully." *Toombs v. Leone*, 777 F.2d 465, 472 (9th Cir.1985). *See also Miranda v. Southern Pacific Transportation Co.*, 710 F.2d 516, 522–23 (9th Cir.1983) (due process requires opportunity to prepare defense and explain questionable conduct at hearing); *United States v. Blodgett*, 709 F.2d 608, 610 (9th Cir.1983) (same).

Wilson argues that he received no advance notice that sanctions were being sought against him. Although the Application for Sanctions clearly described the transaction for which the sanctions were being sought, the Application did not name Wilson. Wilson maintains he reasonably could not have known nor inferred from the face of the Application that the Receiver was seeking sanctions against him.

■ Clearly, Wilson can be held responsible for the actions that his employee, Kelso, took at his direction. However, we find the record insufficient to show that Wilson received adequate notice that the district court was considering imposition of sanctions against him for Kelso's conduct. Therefore, we must reverse the district court's award of sanctions against Wilson. We expressly do not, however, attempt to prejudice further proceedings for sanctions that meet fair notice requirements.

II. *Section 1927 Sanctions Against Kelso*

■ The district court held Wilson and Kelso jointly and severally liable for sanctions under § 1927. Sanctions under § 1927 may be assessed against "[a]ny attorney or other person admitted to conduct cases in any court." As a nonattorney, and unadmitted to conduct cases in any court, Kelso argues that the district court erred in assessing sanctions against him.

Kelso is correct. Section 1927 does not authorize recovery from a party or an employee, but "*only* from an attorney or otherwise admitted representative of a party." *1507 Corporation v. Henderson*, 447 F.2d 540, 542 (7th Cir.1971) (emphasis added). *See also Motion Picture Patents Company v. Steiner*, 201 F. 63, 64 (2d Cir.1912). Although the district court may have other avenues of authority to sanction Kelso and to hold Kelso and Wilson jointly and severally liable, such authority does not exist under § 1927. Since the district court based its imposition of sanctions exclusively on its authority under § 1927, we have no basis to review the propriety of sanctions under alternative theories. *See Roadway Express*, 447 U.S. at 767, 100 S.Ct. at 2464–65.

CONCLUSION

The judgment of the district court is VACATED and the case is REMANDED for further proceedings. Upon a proper application for sanctions adequately noticed, the court may consider such other remedies or sanctions against Wilson or Kelso as may be appropriate.