June 15, 1992

157

CLERK OF COURT
SUPREME COURT. CNMI
FILED

92 JUN 15 P 2: 49

BY: _____

IN THE SUPREME COURT OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, ) | APPEAL NO. 91-010 CIVIL ACTION NO. 91-030 |
| Plaintiff, ) | |
| OFFICE OF THE ATTORNEY GENERAL FOR THE COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, ) ) ) | OPINION |
| Aggrieved Party/Appellant, ) | |
| vs. ) | |
| JOHN SAN NICOLAS BORJA, ) | |
| Defendant-Appellee. ) | |

Argued and submitted October 18, 1991

Counsel for Aggrieved Party/
Appellant:

Ronald A. Hammett
Asst. Attorney General
2nd Floor, Administration Bldg.
Saipan, MP 96950

Counsel for Defendant/Appellee:

G. Anthony Long
Caller Box AAA 1797
Saipan, MP 96950

Amicus Curiae:
(Appearing pro se)

Theodore R. Mitchell
P.O. Box 2020
Saipan, MP 96950

BEFORE: DELA CRUZ, Chief Justice, VILLAGOMEZ and BORJA, Justices.

DELA CRUZ, Chief Justice:

Aggrieved party/appellant herein, the Office of the Attorney General, appeals two orders of the Superior Court assessing sanctions against it. We granted a stay of the orders pending appeal. We now vacate the sanctions imposed and remand to the Superior Court for further proceedings.

I

FACTS

On February 13, 1991, police officers from the Commonwealth's Department of Public Safety Special Operations Division ("SOD") searched the Koblerville residence of John SN. Borja ("Borja") pursuant to a duly executed search warrant. The officers confiscated a .38 caliber revolver and ammunition, a bag containing marijuana, $8,950 in cash, trace amounts of a substance believed to be methamphetamine (commonly known as "ice"), and certain drug paraphernalia.

The case came before the Superior Court for status conference on March 19, 1991. The defendant orally moved that the $8,950 cash be returned to him, and the prosecutor stated that it did not intend to file drug trafficking charges against Borja or to seek forfeiture of the money. It was understood that the $8,950 would be returned to Borja through appropriate administrative channels. The Superior Court did not issue a specific order to that effect.

Also on March 19, 1991, after the status conference, the prosecutor wrote a memorandum to SOD indicating that since neither

161

drug-trafficking charges nor forfeiture proceedings would be pursued against Borja, the money should be released to him in accordance with normal procedures. Instead of returning the money to Borja as instructed by the prosecutor, SOD transferred the money to the U.S. Federal Bureau of Investigation (the "FBI") on April 2, 1991, and requested the FBI to initiate an "adoptive forfeiture" under federal law.

On April 10, 1991, Borja filed a written motion with the Superior Court for the return of his money. The motion was served on the prosecutor approximately ten (10) minutes before the hearing. After argument that day, the court continued the hearing to April 12th, to allow the government to review the authorities which defendant had cited. The court heard further arguments on Friday, April 12th, and, at 4:32 p.m. that day, the court entered a "Decision and Order" ordering the "Government" to return the money no later than 12:00 p.m. the following Monday, April 15, 1991. The court order also imposed a $10,000 sanction on the Office of the Attorney General, payable by April 30, 1991, "for failure to take notice of local rules of procedure."

On Monday morning, April 15th, the government filed a motion for reconsideration of the Decision and Order issued April 12th. The government alternatively requested a stay of the sanction imposed. At noon on April 16th, the court entered a written order denying the motion for reconsideration and the request for a stay. The April 16th order also provided that:

> If the Attorney General's Office fails to turn
> over the money on April 15, 1991 at 12:00 p.m.

162

as ordered, then the Attorney General's office shall pay a fine of $1,000 a day. If the $10,000 sanction is not paid on or before April 30, 1991, at 12:00 p.m., then the Attorney General's Office shall pay a fine of $2,000 a day.

The government already had returned the $8,950 to the defendant on April 15th, thereby avoiding the conditional "fine" of $1,000 per day.[1] Taking the April 12th and the April 16th orders together, the Superior Court imposed a $10,000 sanction on the Attorney General's Office, plus a conditional sanction of $2,000 per day if the $10,000 sanction imposed was not paid by 12:00 p.m., April 30, 1991. On April 22, 1991, the Office of the Attorney General appealed these portions of the Superior Court's April 12th and 16th orders sanctioning counsel. We granted a stay of the orders imposing sanctions on counsel pending resolution of this appeal.

## II

### ISSUE PRESENTED

 The issue raised on appeal is whether the Superior Court abused its discretion in imposing sanctions against the Office of the Attorney General without according it notice and a hearing.[2]

---

[1] The term "fine" is usually associated with criminal offenses. Because it is unclear whether the Superior Court imposed the sanction upon appellant for criminal contempt, we utilize the term "sanction." See Miranda v. Southern Pacific Transp. Co., 710 F.2d 516, 521 (9th Cir. 1983)("we utilize the term "monetary sanction" to avoid this [criminal] connotation.")

[2] Amicus Curiae has also raised a side issue regarding the constitutionality of the Judicial Building Fund Act of 1990. We decline to discuss the constitutional points raised only by amicus, where the issues were not raised by the parties in the trial court or on appeal. Long v. Odell, 372 P.2d 548 (Wash. 1962). Amicus will not be permitted to create, extend, or enlarge the issues presented on appeal, Phoenix v. Phoenix Civic Auditorium & Convention Center Assoc., 408 P.2d 818, reh. den. 412 P.2d 43 (Ariz. 1965), unless a party also properly raises such issues on appeal. See Ada v. Sablan, No. 90-006, 1 N.Mar.I. 164, 169 (Nov. 16, 1990). The court examines an amicus brief solely for whatever aid it provides in analyzing the legal questions before the court. Sony Corp. of America v. Universal City Studios, Inc., 464 U.S. 417, 104 S.Ct. 774, 785 n. 16, 78 L.Ed.2d 574 (1984).

We review the trial court's imposition of sanctions applying the abuse of discretion standard. <u>Lucky Development Co., Inc. v. Tokai U.S.A., Inc.</u>, No. 91-003 (N.M.I. April 20, 1992).[3]

### III

### ANALYSIS

In its two orders, the Superior Court did not specify the authority upon which it relied to impose the $10,000 sanction, and our review of the record does not shed much light on this threshold question. For this reason, we need to examine the possible bases upon which the Superior Court may have imposed sanctions on appellant. We conclude that the imposition of sanctions by the trial court rested on either (a) criminal contempt of court or (b) the court's inherent power. <u>Hicks on Behalf of Feiock v. Feiock</u>, 485 U.S. 624, 108 S.Ct. 1423, 1429, 99 L.Ed.2d 721 (1988); <u>Zambrano v. City of Tustin</u>, 885 F.2d 1473, 1478 (9th Cir. 1989).

### A. Contempt of Court

Contempt of court may be civil or criminal. Criminal contempt is specifically addressed by Commonwealth law and our court rules. <u>See</u>, 6 CMC Section 3307; Com.R.Crim.P. Rule 42. Civil contempt, on the other hand, flows from the court's inherent powers and may be used by a court to enforce compliance with its lawful orders through civil contempt.[4] <u>Shillitani v. United</u>

---

[3] In <u>Lucky</u>, we reviewed the trial court's imposition of attorney sanctions under Rule 11 for an abuse of discretion. The abuse of discretion standard of review is also appropriate for appeals concerning sanctions imposed by a trial court whether pursuant to the court's inherent power or for criminal contempt.

[4] We examine the court's inherent powers at Part III B, <u>infra</u>.

164

<u>States</u>, 384 U.S. 364, 370, 86 S.Ct. 1531, 1535 (1966).

■The U.S. Supreme Court has held that to distinguish civil from criminal contempt, an appellate court should look to what the trial court primarily sought to accomplish by imposing the sanction. <u>Shillitani v. United States</u>, 384 U.S. at 370, 86 S.Ct. at 1535 (1966). In its inquiry, the court should consider the "character and purpose" of the punishment imposed by the trial court, <u>Shillitani v. United States</u>, 384 U.S. at 369, 86 S.Ct. at 1535, <u>Gompers v. Buck Stove & Range Co.</u>, 221 U.S. 418, 441, 31 S.Ct. 492, 498 (1911), and look to "the substance of the [contempt] proceeding and character of the relief that the proceeding will afford." <u>Hicks v. Feiock</u>, 108 S.Ct. 1423.

■Sanctions for civil contempt are employed either to coerce compliance with a court order or to compensate a complainant for losses sustained. <u>United States v. United Mine Workers of America</u>, 330 U.S. 258, 303-308, 67 S.Ct. 677, 701-702, 91 L.Ed. 884 (1947), <u>Falstaff Brewing Corp. v. Miller Brewing Co.</u>, 702 F.2d 770, 778 (9th Cir. 1983), <u>United States v. Asay</u>, 614 F.2d 655, 659 (9th Cir. 1980). If the sanctions imposed for civil contempt are for compensatory purposes, the sanction imposed is to be paid to the complainant. <u>Falstaff Brewing Corp. v. Miller Brewing Co.</u>, 702 F.2d at 779. If the civil contempt sanctions are designed to coerce compliance with a court order, the alleged contemnor must be given the opportunity to comply and avoid the penalty. <u>Hicks v. Feiock</u>, 108 S.Ct. at 1430 n. 6, <u>Falstaff Brewing Corp. v. Miller Brewing Co.</u>, 702 F.2d at 778.

165

 Sanctions for criminal contempt, on the other hand, are unconditional, and are intended to punish the contemnor and vindicate the authority of the court. <u>Hicks v. Feiock</u>, 108 S.Ct at 1429. Our courts are empowered by statute to impose penalties for criminal contempt, 6 CMC Section 3307,[5] but a court should (a) follow the procedural requirements of Rule 42, Com.R.Crim.P.,[6] or, where appropriate, (b) instruct the prosecutor to file a charge for criminal contempt.[7] The penalty for criminal contempt in the Commonwealth is limited to $100 or six months incarceration, or both.[8] 6 CMC Section 3307.

---

[5] Six CMC Section 3307 provides, in pertinent part:

Every person who unlawfully, knowingly, and willfully interferes directly with the operation and function of a court, by open defiance of an order, in or near the courtroom, . . . is guilty of criminal contempt and upon conviction thereof may be imprisoned for a period of not more than six months, or be fined not more than $100, or both.

[6] Com.R.Crim.P. 42, which is substantially similar to Fed.R.Crim.P. Rule 42, provides:

(a) <u>Summary Disposition</u>. A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered on record.

(b) <u>Disposition Upon Notice and Hearing</u>. A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice may be given orally by the judge in open court in the presence of the defendant or, on application of the government attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. The defendant is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent. Upon a finding of guilt the court shall enter an order fixing the punishment.

[7] In this case it would be pointless to instruct the Attorney General to prosecute itself. Generally, criminal contempt of court should be prosecuted under the procedures detailed in Rule 42, Com.R.Crim.P.

[8] Six CMC Section 3307, see note 5 <u>supra</u>, derives from 11 TTC Section 451, which was modeled after the California "Of Contempt" statute. <u>See</u> Cal.Code Civ.P. Section 1209. The federal statute, 18 U.S.C. Section 402, provides for the offense of criminal contempt punishable by a fine of up to $1,000 and/or a maximum of six months imprisonment. Additionally, a separate federal statute, 18 U.S.C. Section 401, empowers federal courts to punish contempt "by fine or imprisonment, at its discretion." The Commonwealth does not have a corresponding local statute to punish contempt "by fine or imprisonment, at its discretion." Thus, for criminal contempt, our only criminal statute is 6 CMC Section 3307, leviable under Rule 42, Com.R.Crim.P., with a maximum penalty of six months imprisonment and/or $100. We hasten to note, as discussed in Part III.B., <u>infra</u>, that our courts may alternatively sanction for non-criminal contempt of court through the exercise of its inherent powers. Such civil contempt sanctions are not constrained by the maximum punishment allowed for criminal contempt under 6 CMC Section 3307.

In the instant case the Superior Court imposed a combination of sanctions on the Attorney General: (1) a straight $10,000 sanction to be paid to the Clerk of Court; (2) a conditional sanction of $2,000 per day for each day beyond April 30, 1991 that the Attorney General fails to pay the $10,000 sanction; and (3) another conditional sanction of $1,000 for each day beyond April 15, 1991 that the Attorney General failed to return the money to Borja.[9]

To the extent that the $10,000 sanction is unconditional and immediately due and payable, it is tantamount to a sanction imposed for criminal contempt. "A contempt judgment is criminal when it requires the contemnor to pay to the government an unconditional fine." Falstaff Brewing Corp., 702 F.2d at 779. We have little doubt that the Superior Court intended to punish appellant for its failure "to take notice of local rules of procedure." As the U.S. Supreme Court has noted, an unconditional penalty is criminal in nature because it is "solely and exclusively punitive in character." Hicks v. Feiock, 108 S.Ct. at 1430, quoting Penfield Co. v. Securities and Exchange Commission, 330 U.S. 585, 593, 67 S.Ct. 918, 922, 91 L.Ed. 1117 (1947). Moreover, the criminal character of the $10,000 sanction is supported by the fact that it is to be paid to the clerk of the Superior Court, not to Borja. Hicks v. Feiock, 108 S.Ct. at 1429.

Complicating our analysis regarding the authority relied

---

[9] The conditional sanction of $1,000 per day imposed by the Superior Court until the Attorney General returned the money to San Borja is not an issue on appeal; the Attorney General avoided this sanction by returning the money before noon of April 15, 1991. The ability of the Attorney General to avoid this sanction reveals that this sanction -- assuming it was levied for contempt -- arguably was for civil contempt.

167

upon for the imposition of sanctions is the additional sanction imposed by the Superior Court of $2,000 per day for each day beyond April 30, 1991 that the Attorney General fails to pay the $10,000 sanction. This sanction has the characteristic of civil contempt because the Attorney General could avoid such sanction by timely paying the unconditional $10,000 sanction.

Together, the two sanctions are thus partly criminal and partly civil in character. As the U.S. Court of Appeals for the Ninth Circuit has held, "[w]here a fine contains an admixture of civil and criminal elements, the criminal aspect of the order fixes its character for purposes of procedure on review." Falstaff Brewing Corp., 702 F.2d at 780. Thus, if the Superior Court assessed the sanctions against appellant for contempt, the appellant should have been afforded the process due for criminal contempt proceedings. Com.R.Crim.P. Rule 42. We turn now to the process due in a criminal contempt proceeding.

Under Rule 42 of the Commonwealth Rules of Criminal Procedure, the Superior Court may find one in criminal contempt by two methods: summary disposition or upon notice and hearing.[10] Summary contempt proceedings "are unique to criminal procedure and are reserved for exceptional circumstances where "instant action is necessary to protect the judicial institution itself."" Miranda v. Southern Pacific Transpo. Co., 710 F.2d 516, 522 (9th Cir. 1983), quoting In re Gustafson, 650 F.2d 1017, 1022 (9th Cir. 1981). For example, where a person actively disrupts a session of court in the

---

[10] See note 6 supra, for a recitation of Com.R.Crim.P. Rule 42.

168

presence of the trial court judge, instant action by the judge through use of summary contempt proceedings would be appropriate.[11] But even when "instant action" is necessary, "the court must give the contemnor advance warning that he is at risk of being found in contempt." Crooks v. Maynard, 718 F.Supp. 1460, 1465 (D.Idaho 1989), affirmed, 913 F.2d 699 (9th Cir. 1990). And "[w]here, as here, the conduct giving rise to the imposition of sanctions occurred outside the presence of the court, counsel should be provided an opportunity to explain his conduct." United States v. Blodgett, 709 F.2d 608, 610 (9th Cir. 1983).

██ To adjudge one guilty of criminal contempt under subsection (b) of Rule 42, Com.R.Crim.P., the court must provide the alleged contemnor notice, an opportunity to respond, and a hearing. Miranda, 710 F.2d at 522. Rule 42(b) details the information which must be contained in the notice. To find one in criminal contempt requires that the contemnor acted in "willful disobedience" to an order of the court. Falstaff Brewing Corp., 702 F.2d at 782. The contemnor's willfulness must be proved beyond a reasonable doubt. Id. at 782; See also, United States v. Powers, 629 F.2d 691 (9th Cir. 1980); Ranipu v. Trust Territory, 2 TTR 167, 170 (High Ct.Tr.Div. 1961).

██ The record in the instant case does not reveal that appellant had any "advance warning" that its acts or omissions may be subject to contempt or given any chance to explain his conduct.

---

[11] One commentator has drawn a distinction between "direct" contempt, or those which occur in the presence of the judge and may be punished summarily, and "constructive" contempt, which are committed outside the presence of the court and may be punished only after notice and a hearing. See 3 C. Wright, Federal Practice and Procedure: Criminal 2d Section 703 (1982).

169

Furthermore, the record before us does not show that "instant action" was necessary in order to protect the integrity of the Superior Court. While we can understand the Superior Court's apparent frustration over the government's failure to return Borja's money, a number of events which constituted the contemptible conduct occurred outside the courtroom. For these reasons, the Superior Court should not have applied a summary criminal contempt proceeding under Rule 42(a), Com.R.Crim.P. Appellant should be afforded the due process safeguards required under Com.R.Crim.P. Rule 42(b) before the Superior Court may find counsel in criminal contempt. The record shows, however, that appellant was not provided the due process required under Rule 42(b). Appellant had no notice that the court was considering sanctions against it, and had neither an opportunity to respond nor was a hearing accorded. Nor was there proof shown beyond a reasonable doubt that appellant acted in willful disobedience to an order of the Superior Court. Although no specific order was entered which required the transfer of the money back to Borja, that fact, by itself, does not necessarily mean that there was no basis for a finding of contempt.[12] If, on remand, the Superior Court _intends to punish appellant_ for criminal contempt, it must do so pursuant to Rule 42(b), Com.R.Crim.P.

---

[12] Appellant places great emphasis on the fact that the Superior Court failed to issue a specific order. We recognize that a court order is usually a "[d]irection of a court or judge made or entered in writing, and not included in a judgment." Black's Law Dictionary 988 (5th ed. 1979). However, a fair reading of the transcript of the proceeding below reveals that the Superior Court would have issued an order requiring a return of the money to Borja had not appellant stated in open court that such would be handled through administrative channels. Appellant may not now interpose a defense which relies, in part, on facts which may have resulted from appellant's own misplaced representations and/or negligence.

## B. The Court's Inherent Power

Aside from the statutory criminal contempt basis, the Superior Court also has a general "inherent power" to impose civil contempt sanctions. "Inherent powers derive from the absolute need of a trial judge to maintain order and preserve the dignity of the court." Zambrano v. City of Tustin, 885 F.2d at 1478, see also Miranda, 710 F.2d at 520.[13] The court's inherent power consist of those which "are necessary to the exercise of all others." Roadway Express, Inc. v. Piper, 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980), quoting United States v. Hudson, 7 Cranch 32, 34, 3 L.Ed. 259 (1812).

As we mentioned at the outset, civil contempt flows from the court's inherent powers. Shillitani, 384 U.S. at 370, 86 S.Ct. at 1535. The U.S. Supreme Court has described a court's power to issue a contempt sanction as its "most prominent" inherent power. Roadway Express, 447 U.S. 752 at 764, 100 S.Ct. at 2463 (1980). A trial court, however, must exercise its inherent power to sanction "with restraint and discretion" because such powers "are shielded from direct democratic controls." Id.

Before exercising its inherent power to sanction for

---

[13] We note that in Zambrano, the U.S. Court of Appeals for the Ninth Circuit held that a federal district court may enforce its "locally" promulgated rules through either its inherent judicial power or through the "legislative" authority granted to it by statute to promulgate local district court rules. Id., 885 F.2d at 1479. Our rules of court are promulgated by our judiciary and submitted to the legislature before they may become effective. 1 CMC Section 3403(c). While such process for judicial rule-making may not appear to be a "legislative" grant of authority as discussed in Zambrano, our courts have a basic inherent power to enforce its court rules, whether it may be considered "local" (e.g. rules of practice unique to that court only) or not (e.g. rules of civil or appellate procedure). Our rules of civil procedure (Rule 11) and rules of appellate procedure (Rule 38) expressly provide for the imposition of sanctions. This is in addition to our inherent power to impose sanctions. See Tenorio v. Superior Court, No. 89-002, 1 N.Mar.I. 12 (Mar. 19, 1990)(where appropriate, we will "impose sanctions . . . by applying [Rule] 38(b) or by exercising our inherent authority." Id., slip op. at 14, 1 N.Mar.I. at 17). The fact that a rule does not expressly provide for sanctions does not mean that a court is powerless to enforce such rule when it is violated. Id.

171

civil contempt, the court must allow the attorney fair notice and an opportunity for a hearing on the record, Roadway Express, 447 U.S. at 766-767, 100 S.Ct. at 2464; FTC v. Alaska Land Leasing, Inc., 799 F.2d 507, 510 (9th Cir. 1986), and give counsel an opportunity to demonstrate that his or her questionable conduct was not undertaken recklessly or willfully. Alaska Land Leasing, 799 F.2d at 510; Toombs v. Leone, 777 F.2d 465, 471-472 (9th Cir. 1985). The trial court must then specifically find that the attorney acted in bad faith.[14] Zambrano, 885 F.2d at 1478; United States v. Stoneberger, 805 F.2d 1391, 1393 (9th Cir. 1986).

If the basis for the sanctions was the judiciary's inherent powers, the Superior Court did not follow these requirements before imposing sanctions. Appellant had no notice or warning that the Superior Court was considering the imposition of sanctions, and no meaningful hearing regarding sanctions was conducted. It should have afforded appellant these procedural safeguards.[15]

In reviewing the record before us, we note that the Superior Court concluded (1) appellant violated Commonwealth Rule

---

[14] Appellee cites CNMI v. Bordallo, No. 90-050 (N.M.I. July 2, 1991), to support its argument that this jurisdiction does not require a finding of bad faith before the court may impose sanctions under its inherent power. In Bordallo, we imposed sanctions under Rule 38(b), Com.R.App.P. -- not pursuant to the court's inherent power -- because the parties, among other things, submitted to the court for decision issues that were not properly before it. We held that failure to disclose such information constituted misrepresentation. Bordallo, slip op. at 6 n. 1. An imposition of sanctions under Rule 38(b), however, does not necessarily require a finding of bad faith. We hold that an imposition of sanctions under the court's inherent power requires a finding of bad faith.

[15] In CNMI v. Kawai, No. 89-11, 1 N.Mar.I. 27 (N.M.I. Jan. 17, 1990), we sanctioned counsel under Rule 38(b) for filing a frivolous appeal without according counsel a separate hearing because it was clear from the record and briefs submitted that counsel had absolutely no legal or factual basis for appeal. Under Rule 38(b), the court can and will sanction counsel "upon its own initiative" for filing an appeal that on its face is clearly without merit, factually or legally.

172

of Criminal Procedure Rule 41(e),[16] and (2) "the government acted in bad faith." These conclusions, however, while justifying the imposition of sanctions by the Superior Court based apparently on its inherent power, were made without providing appellant the requisite procedural due process safeguards of notice and an opportunity to be heard.

To summarize, we conclude that the Superior Court imposed sanctions on appellant for either criminal contempt or pursuant to its inherent judicial power to hold a person in civil contempt.[17] We need not decide which power the Superior Court actually exercised in sanctioning appellant; we leave that point for clarification by the Superior Court on remand.[18] Under either source of authority, however, we hold that the Superior Court must extend to appellant the necessary due process protection before imposing sanctions, where, as here, the circumstances do not justify summary contempt proceedings.

---

[16] Com.R.Crim.P. Rule 41(e) provides:

Motion for Return of Property. A person aggrieved by an unlawful search and seizure or by the deprivation of property may move the court for the return of the property on the ground that such person is entitled to lawful possession of the property. The Court shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted, the property shall be returned to the movant, although reasonable conditions may be imposed to protect access and use of the property in subsequent proceedings. If a motion for return of property is made or comes on for hearing after an information is filed, it shall be treated also as a motion to suppress under Rule 12.

[17] In its Memorandum Opinion dated May 1, 1991, granting appellant's request for a stay of the sanctions imposed, the court stated it "view[ed] the sanction as civil in nature . . ." (See Memorandum Opinion at page 3 n. 5.) However, further research and deliberation by the court of the arguments presented on appeal has convinced the court that the sanctions may have been imposed for either a civil contempt or criminal contempt.

[18] From the record it is apparent that appellant will have much explaining to do upon remand at its hearing. It is unclear how appellant could state in open court that the money would be returned to Borja through administrative channels, and subsequently sign off on a federal form which clearly states that there are no legal barriers to federal seizure of the money at issue. The CNMI Judiciary has little sympathy for foibles caused by an intra-office lack of communication or coordination.

173

## IV

### OTHER ISSUES

 wo specific assertions by appellant warrant some discussion. First, appellant asserts that imposition of sanctions against it somehow "upsets the balance of power between the three branches of government" or that the Superior Court "attempted to legislate" when it imposed the sanction. We disagree. A court does not impinge upon the authority of either the executive or the legislative branches of government by imposing sanctions on errant officers of the court, and if the court exercises its inherent power and imposes civil contempt sanctions, the amount of the sanction imposed is not "legislating."[19] The law is quite clear that a court may impose sanctions for civil contempt pursuant to its inherent authority. Appellant itself appears somewhat familiar with this area of the law, having cited such cases to support its arguments on appeal. None of those cases, however, hold, let alone discuss, that the imposition of judicial sanctions over a certain sum invades the power of the legislative branch.

Second, appellant contends that the sanction imposed on it is excessive. Whether appellant is correct in this regard will depend upon whether the sanction was levied for criminal contempt or for civil contempt pursuant to the trial court's inherent power. If the sanctions were levied for criminal contempt, then any amount

---

[19] It is unclear from appellant's brief whether the amount of the sanction imposed prompted this argument. If the Superior Court meant to find appellant in criminal contempt, then the sanction was excessive and arguably could be construed as a judicial attempt to alter the relevant statute, 6 CMC Section 3307. See note 8, supra. Appellant cannot make a similar argument regarding sanctions imposed under the court's inherent power because there are no statutory limits on such sanctions, only discretionary limits. See discussion at page 16, infra.

174

over $100, we agree, would be excessive.[20] 6 CMC Section 3307.

 If, however, the Superior Court found appellant in civil contempt through the exercise of its inherent power, then "any sanction imposed must be proportionate to the offense and commensurate with principles of restraint and dignity inherent in judicial power."[21] Zambrano, 885 F.2d at 1480. "Attorneys should not be disciplined by financial reprisal for conduct attributable to mistake, inadvertence or error of judgment." Id. at 1480, quoting In re Sutter, 543 F.2d 1030, 1035 (2nd Cir. 1976).

The trial court should not exercise its inherent power to assess monetary sanctions against counsel absent grossly negligent, reckless, or willful conduct. Zambrano, at 1480. Even where monetary sanctions may properly be imposed, a trial court should consider the use of more moderate penalties, such as reprimanding counsel in open court.[22] Monetary sanctions which the court may impose should be commensurate with the severity of the conduct and designed to deter similar misconduct in the future. And we pause to note that "[t]he court system is not a private party that needs to be reimbursed for its inconvenience." Id. at 1480.

---

[20] See discussion at note 8, supra.

[21] The court in Zambrano discusses the use of sanctions in the context of an attorney's violation of a federal district court's 'local rules.' See Zambrano, 885 F.2d at 1480-81. As discussed above, the source of power which a Commonwealth Court may exercise to enforce its rules differs from that construed by the court in Zambrano. See note 13, supra. We believe, however, that the discussion concerning sanctions in Zambrano provides useful guidance for a trial court considering sanctioning counsel through use of its inherent powers.

[22] As the court in Zambrano wrote: "As anyone experienced in litigation knows, lectures in open court are often sufficient to press home the significance of local rules, particularly for a first offense. Public embarrassment is, beyond cavil, a powerful motivator of human conduct." Zambrano, 885 F.2d at 1480 n. 24.

## V

### CONCLUSION

For the reasons stated hereinabove, we **VACATE** the sanctions imposed on the Office of the Attorney General by the Superior Court and **REMAND** the case so that it shall be accorded notice and a hearing regarding its conduct in the proceedings below.

DATED: June 15th, 1992

JOSE S. DELA CRUZ
Chief Justice

RAMON G. VILLAGOMEZ
Associate Justice

JESUS C. BORJA
Associate Justice