**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JEFFREY SNELLER; SHERRY MILLS
SNELLER,

        *Plaintiffs-Appellants,*

        v.

CITY OF BAINBRIDGE ISLAND, a
Washington municipal corporation;
MEGHAN MCKNIGHT; BOB EARL;
DARLENE KORDONOWY,

        *Defendants-Appellees.*

No. 09-35056

D.C. No.
CV 07-5338 RBL

OPINION

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted
January 14, 2010—Seattle, Washington

Filed May 25, 2010

Before: Andrew J. Kleinfeld, A. Wallace Tashima, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Tashima;
Dissent by Judge Tallman

## COUNSEL

Edmund K. Kamai, Seattle, Washington, for the plaintiffs-appellants.

Michael C. Walter, Seattle, Washington, for the defendants-appellees.

## OPINION

TASHIMA, Circuit Judge:

Plaintiffs-Appellants Jeffrey and Sherry Sneller (together, the "Snellers") appeal from a $24,000 sanction award to Defendants-Appellees the City of Bainbridge Island (the "City"), Meghan McKnight, Bob Earl, and Darlene Kordonowy (collectively, "Defendants") under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927. The Snellers argue that imposition of the sanction was error because they effectively withdrew any claims that violated Rule 11(b) during the safe harbor period, before Defendants filed their motion for sanctions. We agree and therefore reverse.[1]

## BACKGROUND

This case arises from a land use dispute between the Snellers and the City over the Snellers' efforts to develop property which included a wetland. The Snellers brought suit in federal court against the City, several of its employees, and other defendants no longer parties to this appeal.

---

[1]The Snellers also argue that Defendants failed to comply with the procedural requirements of Rule 11, as set forth in *Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 788-89 (9th Cir. 2001). Because we conclude that the sanctions must be reversed, we need not rule on this question.

The City, alleging that certain claims were frivolous, requested that those claims be dropped and that the individual City employees be dismissed from the lawsuit. The City prepared a motion for sanctions under Rule 11 and 28 U.S.C. § 1927 and served the motion on the Snellers' attorney on August 1, 2008. The motion specifically requested that the Snellers drop their claim for violations of the Washington State Constitution, their claim of civil conspiracy, and all claims against the individual defendants. The City also moved for partial summary judgment on the Snellers' state constitutional law and civil conspiracy claims, as well as all claims against the individual defendants employed by the City.

Three days before the end of the safe harbor period, the Snellers filed a motion to amend their complaint and submitted a proposed Third Amended Complaint which omitted each of the claims referenced in Defendants' motion for sanctions. The Third Amended Complaint, however, added two new causes of action.

After the motion to amend was served on the Snellers and the 21-day safe-harbor period required by Rule 11, *see* Fed. R. Civ. P. 11(c)(2), had passed, the City filed the motion for sanctions with the district court. On September 22, 2008, the district court granted the City's motion for partial summary judgment, denied the Snellers' motion to amend their complaint, and granted the City's motion for sanctions. The court granted the sanction under both Rule 11 and § 1927 against the Snellers and their counsel of record.

On October 27, 2008, the Snellers moved to dismiss with prejudice their remaining federal claims and all claims against the individual defendants. They also sought to dismiss without prejudice their remaining state law claims. The district court granted the Snellers' motion to dismiss, and the Snellers now appeal the imposition of sanctions under Rule 11 and 28 U.S.C. § 1927.

## JURISDICTION

We have jurisdiction over the final decisions of the district courts under 28 U.S.C. § 1291. Ordinarily, a voluntary dismissal without prejudice is not an appealable final judgment. *Concha v. London*, 62 F.3d 1493, 1507 (9th Cir. 1995). However, "when a party that has suffered an adverse partial judgment subsequently dismisses remaining claims without prejudice with the approval of the district court, and the record reveals no evidence of intent to manipulate our appellate jurisdiction, the judgment entered after the district court grants the motion to dismiss is final and appealable under 28 U.S.C. § 1291." *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1070 (9th Cir. 2002).

Here, the Snellers suffered an adverse partial judgment when the district court granted the City's motion for partial summary judgment, there is no evidence that the Snellers moved to dismiss the claims without prejudice in order to manipulate appellate jurisdiction, and Defendants do not contend otherwise. Instead, the Snellers' reason for the dismissal, that the remaining claims are state law claims and that any future suit will be in state court, appears legitimate. *See Am. States Ins. Co. v. Dastar Corp.*, 318 F.3d 881, 888 (9th Cir. 2003) (noting that the plaintiff in *James* offered a legitimate reason for dismissal). We therefore have jurisdiction over this appeal pursuant to § 1291.

## ANALYSIS

### I.

We review the district court's imposition of Rule 11 sanctions for abuse of discretion. *Detabali v. St. Luke's Hosp.*, 482 F.3d 1199, 1203 (9th Cir. 2007). A district court abuses its discretion when it applies the incorrect legal standard or bases its ruling "on a clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990).

**[1]** Rule 11 authorizes a court to impose a sanction on any attorney, law firm, or party that brings a claim for an improper purpose or without support in law or evidence. Rule 11(c), however, provides a 21-day safe harbor period. Under this provision, Rule 11 sanctions may not be imposed if the challenged claim is withdrawn within 21 days after service of the sanctions motion. Fed. R. Civ. P. 11(c)(2); *see also Barber v. Miller*, 146 F.3d 707, 710 (9th Cir. 1998). The question before this court is whether the Snellers' challenged claims were "withdrawn" for purposes of Rule 11 within the safe harbor period.

**[2]** On August 1, 2008, Defendants served the Snellers with a Rule 11 motion requesting that Plaintiffs dismiss their claims for violations of the Washington State Constitution, civil conspiracy, and all claims against the individual defendants. The Snellers responded eighteen days later with a Motion for Leave to Amend their complaint so as to satisfy these requests. The Snellers' proposed Third Amended Complaint omitted each of the claims referenced in Defendants' motion for sanctions. By filing the motion to amend within the 21-day safe harbor period, the Snellers withdrew all of the challenged claims as required by Rule 11.[2] There is nothing more that the Snellers were required to do in terms of withdrawing the challenged claims. *See Truesdell v. S. Cal. Permanente Med. Group*, 293 F.3d 1146, 1153 (9th Cir. 2002) (noting that amendment of a complaint cures a Rule 11 defect). Although the dissent suggests that there were several other ways, besides a motion to amend, for the Snellers to withdraw their offending claims, the availability of those additional suggested methods, even if true, are irrelevant. All that Rule 11 required is that the Snellers withdrew their

---

[2]Although Defendants assert that the Snellers waived this argument by not presenting it to the district court, the Snellers did inform the district court that the amended complaint withdrew the challenged claims. This was sufficient to preserve their argument that the motion to amend their complaint within the safe harbor period made sanctions improper.

claims within the safe harbor period. As explained above, they did.

Defendants contend that the Snellers did not withdraw their challenged claims as required by Rule 11 because they did not dismiss their claims with prejudice under Rule 41(a)(1)(A)(ii), their proposed amendment to the complaint added new causes of action, and they failed completely to excise the names of one of the individual defendants from their Third Amended Complaint.

**[3]** The Rule 11 safe harbor provision, by its plain language, does not require that a party drop its claims with prejudice.[3] All that Rule 11 requires is that the offending pleading be withdrawn. Rule 11 also does not require that a party voluntarily dismiss its entire case under Rule 41(a)(1)(A)(ii) where the motion for sanctions references only some of the claims or parties set forth in a complaint. Filing a motion for leave to amend the complaint under Rule 15 thus constitutes effective withdrawal because it is the only procedure available under the rules to withdraw individual challenged claims. *See Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 687-88 (9th Cir. 2005) (noting that Rule 15, rather than Rule 41, controls the situation where a plaintiff desires to eliminate some but not all of its claims).

**[4]** It is true that the Third Amended Complaint added two new causes of action. However, for Rule 11 purposes, it makes no difference that the proposed amended complaint may have included additional offending claims. The Rule 11 motion is directed only at the claims made in the Second Amended Complaint. Those yet-to-be-filed claims are not the subject of this Rule 11 motion. The proper procedure for chal-

---

[3]It is possible, for example, that a party may later develop subsequent facts which would allow the party to reassert the claim in compliance with Rule 11's non-frivolousness requirement.

lenging any newly-alleged offending claims, if the amended pleading is allowed, is to file a new Rule 11 motion.[4]

Finally, although the Third Amended Complaint mentions City employee Meghan McKnight in describing the factual context of the case, she is not named as a defendant in the caption of the complaint, nor does her name appear in any of the sections describing the Snellers' causes of action, and the Third Amended Complaint seeks no relief against her. Because the Third Amended Complaint cannot be interpreted as asserting a claim against McKnight or any of the other individual defendants, the mere reference to McKnight in the Third Amended Complaint is an insufficient basis to support the sanction.

**[5]** At the end of the day, the Snellers did all that they were required to do to withdraw the offending claims during the safe harbor period. Because their motion was filed within the 21-day safe harbor period, the Snellers complied with Rule 11's requirement that the challenged claim be "withdrawn or appropriately corrected." That was all that was required of them in order to receive the benefit of the safe harbor provision.[5]

---

[4]The dissent also implies that Rule 11 sanctions were proper because of the Snellers' discovery conduct. Diss. at 7503, 7505-06. Rule 11, however, was not intended to, and does not, reach discovery conduct, even if sanctionable. The proper way to sanction discovery misconduct is through the procedures provided under Fed. R. Civ. P. 37, not under Rule 11. Neither the City nor the court *sua sponte* ever instituted any proceedings under Rule 37.

[5]The dissent notes that "the motion to amend the complaint was noted for four weeks after the close of the safe harbor period," Diss. at 7504, and criticizes the Snellers for not "not[ing] the motion during the safe harbor period to ensure that the withdrawal actually occurred during that period." Diss. at 7505. Under Local Rule 7(d)(3) of the Western District of Washington, however, it could not have been noted any earlier because the rule requires a minimum of three weeks' notice.

**II.**

**[6]** Because the sanction cannot be upheld under Rule 11, we must next examine whether it can be affirmed on the alternative basis on which the district court expressly relied, 28 U.S.C. § 1927, to support the imposition of the sanction. The short answer is that it cannot. The sanction here was imposed jointly on counsel and the client, but § 1927 authorizes sanctions only upon counsel. *See FTC v. Alaska Land Leasing, Inc.*, 799 F.2d 507, 510 (9th Cir. 1986). Moreover, the district court made no finding that counsel did, or acted with the purpose to, "so multipl[y] the proceedings . . . unreasonably and vexatiously," 29 U.S.C. § 1927, or that counsel acted recklessly or in bad faith. *See B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002). Thus, the alternative basis for the sanction must also be reversed as unauthorized by the statute.

**CONCLUSION**

While we agree with the district court that the Snellers and their counsel's conduct of this litigation in the district court was less than exemplary and understand the district court's frustration; nonetheless, for the reasons we have explained, the district court's order imposing sanctions on the Snellers and their counsel under Rule 11 and § 1927 must be and is

**REVERSED**.

---

TALLMAN, Circuit Judge, dissenting:

"[L]ess than exemplary" is a generous description of Jeffrey and Sherry Mills Sneller's behavior during the course of this litigation. If there were ever a case in which sanctions were appropriate, this is that case. The Snellers' improper litigation tactics spanned many months and cost the City of

Bainbridge Island (the "City") tens of thousands of dollars in unnecessary attorney fees.

After a land use dispute with the City, the Snellers filed suit against the City, individual City employees, the Washington State Department of Ecology, and several State employees. The City argued that the suit against the individual City employees was brought for an improper purpose and that several of the Snellers' claims were frivolous and unwarranted by existing law.[1]

Mr. Sneller's own words demonstrate beyond cavil that the suit against the City employees was nothing more than a tactical maneuver designed to harass and intimidate public employees. *See* Fed. R. Civ. P. 11(b)(1) (stating that an attorney must not file a pleading with the court that is "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"). On October 29, 2007, Mr. Sneller spoke at the Kitsap Alliance of Property Owners meeting. The meeting was videotaped and

---

[1]For example, the Snellers' claim for violation of the Washington Constitution has not been a colorable theory in Washington for decades. *See Brock v. Wash. State Dep't of Corr.*, No. C08-5167RBL, 2009 WL 3429096, at *9 (W.D. Wash. Oct. 20, 2009) ("Washington courts have consistently rejected invitations to establish a cause of action for damages based upon constitutional violations without the aid of augmentative legislation[.]" (internal quotation omitted)); *Reid v. Pierce County*, 961 P.2d 333, 342 (Wash. 1998) (stating that Washington courts do not recognize a private cause of action for State constitutional violations); *Spurrell v. Bloch*, 701 P.2d 529, 534-35 (Wash. Ct. App. 1985) (same); *Sys. Amusement, Inc. v. State*, 500 P.2d 1253, 1254-55 (Wash. Ct. App. 1972) (same). The filing of these claims was clearly not warranted by existing law. *See* Fed. R. Civ. P. 11(b)(2) (stating that "the claims, defenses, and other legal contentions [in pleadings filed with the court must be] warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"). Thus, contrary to the majority's contention, no facts could ever be discovered that would allow the Snellers to state a valid claim pursuant to the Washington Constitution. *See* Maj. Op. at 7496 n.3.

aired locally on community public television under the title: "Jeffrey Sneller: Man on Fire." During his speech, Mr. Sneller explained why he had brought suit against the City employees:

> [M]unicipalities and government do have weaknesses. . . .
>
> Their . . . weakness is individual staff members. And we determined—we decided when we filed suit against the City of Bainbridge that we were going to those staff members that were responsible individually.
>
> Now, you might say, well, what good is that? What does that solve? Because, after all, their government is going to indemnify them and they have a big war chest. Well, that is not necessarily the case. These staff members apply for credit cards just like all of us. They apply for home loans and they apply for car loans. And when they have a lawsuit pending, every time you fill out that application, it says, "Are you a defendant in a lawsuit?" They better check that box, because it's going to be checked in any event by the company issuing the credit.
>
> If you have a two- or three-million-dollar lawsuit pending against you as a defendant, you're not going to get a cell phone. So that was the approach we took.[2]

Tellingly, the Snellers do not argue on appeal that these claims were appropriate or non-frivolous.

---

[2]It is difficult to imagine what facts could be obtained during discovery to justify what, based on Mr. Sneller's malignant admission, is clearly an improper purpose for naming the City employees in their individual capacity.

The City repeatedly tried to convince the Snellers to withdraw the improper claims, and the Snellers refused time and time again. The City also extended every professional courtesy to give them adequate time to respond and to accommodate a change in counsel. Months went by without a response from the Snellers. The record demonstrates that the City repeatedly requested dismissal of the improper claims in writing on January 17, March 18, June 4, July 1, and July 11, 2008, before serving the Snellers with the motion for sanctions under Federal Rule of Civil Procedure ("Rule") 11 on July 31, 2008. Pursuant to Rule 11's "safe harbor" provision,[3] the City did not file the motion with the court at that time. On the eighteenth day of the safe harbor period, the Snellers responded by filing a motion to amend the complaint removing the claims listed by the City but also adding new claims, which was noted for four weeks after the close of the safe harbor period. Strangely, the Snellers still opposed the City's motion for partial summary judgment related to the offending claims. The next day, the Snellers propounded new discovery requests related to the same claims that were ostensibly withdrawn in the proposed amended complaint.

On August 20, 2008, the City again wrote to the Snellers asking them to drop the "frivolous and malicious" claims against the City. In response, the Snellers' counsel asked the City to "have something drawn up" that he could discuss with the Snellers. Tired of waiting, the City provided a Stipulation and Order of Dismissal, which was sent on August 21, 2008, indicating that if it was not signed and filed by noon on August 22, 2008, the City would file its Rule 11 motion. No response was received; therefore, the City filed its motion for

---

[3]A motion under Rule 11 "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service." Fed. R. Civ. P. 11(c)(2). This twenty-one-day window is commonly known as the "safe harbor" period. *See Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 789 (9th Cir. 2001).

sanctions with the district court as promised. The district court granted the City's motion for sanctions and awarded costs and attorney fees of $24,000 to the City.

With this background in mind, I turn to the legal questions raised by the Snellers' appeal.

## I

"[A]n appellate court should apply an abuse-of-discretion standard in reviewing *all aspects* of a district court's Rule 11 determination." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990) (emphasis added) (noting that distinguishing between legal and factual conclusions in the Rule 11 context is particularly difficult and concluding that a unitary abuse of discretion standard of review was therefore proper). A district court abuses its discretion when it applies the incorrect legal standard or its "application of the correct legal standard was (1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.' " *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 577 (1985)).

## II

## A

My colleagues craft the Snellers' argument on appeal far more cogently than was articulated by the Snellers themselves. In fact, the successful argument on appeal is not found in the "Statement of the Issue," and is only discussed in a single paragraph at the end of the opening brief. More importantly, the Snellers never properly raised the question whether the filing of the Rule 11 motion was procedurally proper before the district court. Therefore, the argument is waived, and we should not consider it on appeal. *See United States v. Childs*, 944 F.2d 491, 495 (9th Cir. 1991) ("As a general rule,

an issue not presented to the trial court cannot be raised for the first time on appeal." (quoting *United States v. Whitten*, 706 F.2d 1000, 1012 (9th Cir. 1983), *abrogated on other grounds by United States v. Perez*, 116 F.3d 840, 842 (9th Cir. 1997) (en banc))).

My colleagues nonetheless conclude that the motion to amend was sufficient to notify the district court that the Rule 11 motion was essentially moot. Maj. Op. at 7495 n.2. However, the Snellers never argued that the motion to amend the complaint rendered the City's filing of the motion for sanctions with the court procedurally improper under Rule 11(c)(2).[4] In fact, they acknowledged in their opposition to the motion for sanctions that not all of the City's objections were remedied by the proposed amended complaint.

Furthermore, the Snellers invited the district court to rule on the Rule 11 motion on the merits in their proposed order denying sanctions, stating the "motion and request for sanctions pursuant to Fed. R. Civ. P. 11 is ripe for determination and for an award of sanctions since the Defendants have served their motion and waited the requisite 21 days before filing this motion under the 'safe harbor' [provisions of] Rule 11." If ruling on the motion was procedurally improper as the majority now says, the motion was certainly not "ripe for determination for an award of sanctions." Thus, the Snellers essentially invited any error that the district court might have

---

[4]As noted above, they do not clearly make the argument here on appeal either. *See United States v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992) (stating that the court "will not ordinarily consider matters on appeal that are not *specifically and distinctly argued* in appellant's opening brief" (quoting *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 738 (9th Cir. 1986)) (emphasis added)). The Snellers' opening brief states only that their response to the City's motion was an "attempt[ ] to comply with the essential purpose of Rule 11," that the Third Amended Complaint sought to remove the offending claims and parties, and that it was filed four days before the City filed its motion for sanctions. The procedural requirements of Rule 11(c)(2) are not mentioned.

made in granting the motion for sanctions. *See Perez*, 116 F.3d at 845 (stating that invited errors involving the relinquishment of a known right are unreviewable on appeal).

## B

On the merits, the district court properly exercised its discretion in determining on this record that the Snellers' failed to withdraw the offending claims within the meaning of Rule 11. First, the Snellers propounded discovery requests related to the City's affirmative defenses to the "withdrawn" claims the day after they filed the motion to amend the complaint. Had the claims actually been withdrawn there would have been no need to conduct this discovery. The discovery request also continued to list City employee Meghan McKnight as a defendant, and multiple interrogatories requested information about this "named City defendant" despite the fact that she was supposedly no longer a defendant.[5]

Second, the amended complaint contained two new claims against the City. These new claims placed the City in an impossible position. The only way to ensure that the offending claims were removed from the case was to agree to the amendment of the complaint; however, this would allow the Snellers to bring new, potentially frivolous claims against the City. Fighting these new claims would then cost the City even more in attorney fees.

Third, the motion to amend the complaint was noted for four weeks after the close of the safe harbor period. Clearly, the City had no control over the district court's decision to

---

[5]I agree that the existence of these new discovery requests is not grounds for sanctions under Rule 11. Maj. Op. at 7497 n.4. However, the Snellers' continued pursuit of discovery related to the allegedly withdrawn claims and parties is certainly relevant to determining whether those claims were truly withdrawn within the meaning of Rule 11. Continuing to litigate the offending claims is not consistent with a good faith agreement to drop them.

grant or deny the motion to amend. Therefore, the City would have been forced to wait four extra weeks, while enduring costly discovery and expending resources arguing the City's previously filed motion for partial summary judgment on the offending claims, with no guarantee that the claims would ultimately be withdrawn. In effect, the withdrawal was made contingent on the Snellers actually pursuing the motion to amend, the court ultimately accepting the Third Amended Complaint in its present form, and the Snellers choosing not to amend again.[6]

If the Snellers truly wished to withdraw the offending claims, they could have noted the motion during the safe harbor period to ensure that the withdrawal actually occurred during that period.[7] Or they could have simply stipulated to the City's motion for partial summary judgment on the offending claims. Instead, the Snellers objected to the motion for partial summary judgment, arguing that the court should

---

[6]The majority asserts that a motion to amend pursuant to Rule 15 is the only means by which the Snellers could have removed the offending claims at this point in the litigation. Maj. Op. at 7496. However, the Snellers could have dismissed their claims against the City employees under Rule 41. *See Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 687 (9th Cir. 2005) (stating that Rule 41 has been interpreted "to allow the dismissal of *all* claims against *one* defendant, so that a defendant may be dismissed from the entire action").

[7]The majority misreads the Local Rules of the Western District of Washington to support the Snellers' timing in noting their motion to amend. Maj. Op. at 7497 n.5 (reading Local Rule 7(d)(3) to allow the motion to be noted no earlier than the third Friday after filing and service of the motion). When the Snellers filed their motion to amend the complaint, Local Rule 7(d)(3) applied only to nondispositive motions not listed in Local Rule 7(d)(2). Local Rule 7(d)(2)(B) specifically provided that a motion to amend pleadings could be noted "no earlier than seven judicial days after filing." Even under the seven day rule the Snellers would have had to file the motion to amend earlier to ensure that the motion could be heard during the safe harbor period. However, considering the fact that the City had been requesting the withdrawal of these claims for at least six months, there was ample time to have done it.

instead allow them to amend the complaint, presumably because this would allow them to bring two new claims into the case even though discovery was about to close.

As the majority notes, the Snellers were not required to undertake any of these suggested methods of withdrawing the offending claims to avoid sanctions under Rule 11. *See* Maj. Op. at 7495-96. However, they were required to actually withdraw the claims to benefit from the safe harbor period. Contrary to the majority's characterization of these litigation tactics, the Snellers did not do "all that they were required to do to withdraw the offending claims during the safe harbor period." *See id.* at 7497. The district court was certainly entitled on the record before it to conclude that the Snellers were continuing to litigate frivolous claims in bad faith.

The district court was well aware of all this when it made its ruling. Moving to amend the complaint is not a magic bullet; the district court had an obligation to consider all the evidence presented surrounding the Snellers' alleged withdrawal, including the Snellers' recalcitrant behavior throughout the course of the litigation, their continued baseless objection to the partial summary judgment on the offending claims, the new discovery requests related to the "withdrawn" claims, and myriad other objections raised by the City through months of correspondence, which were ignored by the Snellers and their counsel. The court's conclusion that the Snellers had not properly withdrawn the offending claims within the meaning of Rule 11 was, therefore, not illogical, implausible, or without support in the record. *See Hinkson*, 585 F.3d at 1262. Thus, it was not an abuse of discretion to award sanctions, and we should affirm the district court's ruling.

## III

Considering the history of improper behavior by the Snellers in this action and the admissions Mr. Sneller made on the local television channel which revealed the true motive for

plaintiffs' intransigence, the district court's determination that the Snellers did not withdraw the offending claims within the safe harbor period was amply supported by the record and was not an abuse of discretion. Unfortunately, the City has now lost even more time and money fighting this frivolous appeal. Plaintiffs should not be able to employ these litigation tactics to harass and intimidate defendants and then avoid the consequences by moving to amend at the eleventh hour. The rules must be enforced so that future parties will know that such behavior is not tolerated in federal court. Otherwise Rule 1's mandate that the Federal Rules of Civil Procedure "should be construed and administered to secure the just, speedy, and inexpensive determination of every action" is merely a toothless aspirational goal.

Because my colleagues take a more charitable view of the Snellers' behavior than did the district judge who observed it firsthand, I respectfully dissent.