**Dyan A. TRUESDELL, Plaintiff,**

v.

**SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP; and the Hospital and Service Employees International Union, Local 399, Defendants.**

**No. CV 01–02337 ABC (BQRX).**

United States District Court, C.D. California.

June 20, 2001.

---

Jerome Zamos, Jerome Zamos Law Offices, Woodland Hills, CA, for Plaintiff.

F. Scott Page, Thomas R. Kaufman, Seyfarth Shaw, Los Angeles, CA, James G. Varga, Van Bourg, Weinberg, Roger & Rosenfeld, Los Angeles, CA, for Defendants.

## ORDER GRANTING DEFENDANT'S MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. PRO. 11 & 28 U.S.C. § 1927

COLLINS, District Judge.

On April 18, 2001, the Court signed an Order granting Defendants' motion to dismiss. In her Complaint, Plaintiff challenged the result (and the procedures) of an arbitration proceeding, performed pursuant to a collective bargaining agreement ("CBA"), concerning Plaintiff's grievance of her termination. The arbitrator reinstated Plaintiff's employment, but did not award her any back pay. This Court found that Plaintiff's Complaint failed to state a claim for relief. Defendant has now filed a Motion for Sanctions pursuant to Rule 11 and/or 28 U.S.C. § 1927. The Motion came on regularly for a hearing before this Court on June 11, 2001. For the reasons indicated below, the Court GRANTS the Motion for Sanctions. Plaintiff's counsel Jerome Zamos is hereby ORDERED to pay $4,945.00 to Defendant, as a sanction.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The full context and background of this case was detailed in the Court's prior order granting Defendants' motion to dismiss, and need not be repeated in its entirety here. *See* Order Re: Motion to Dismiss filed April 18, 2001 (the "Dismissal Order") at 2–6, 8–11. The facts and procedural history of the case are also well known to the parties. Therefore, the Court provides only a brief summary of this background.

Plaintiff DYAN TRUESDELL ("Plaintiff," or "Truesdell") is or was an employee of Defendant SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP (the "Medical Group," or "Defendant") under a

CBA negotiated with or by Defendant THE HOSPITAL AND SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 399 ("SEIU Local 399"). Between 1996 and at least November 1, 1999, Plaintiff was employed on a part-time basis by the Medical Group as a licensed cytotechnologist, under the terms of a CBA between the Medical Group and SEIU Local 399 which became effective on June 19, 1996. Plaintiff was responsible for examining "PAP smear" slides for any actual or potential abnormalities. *See* Dismissal Order at 2.

The Medical Group discharged Plaintiff on or about November 1, 1999 for allegedly unsatisfactory work performance (alleged failure to detect abnormalities in at least four slides). Plaintiff, through SEIU Local 399, grieved her discharge under the CBA, and the matter proceeded to binding arbitration. A hearing before an arbitration panel was held on October 12, 2000. The "neutral" Chair of that panel (Thomas Angelo) issued a decision on October 19, 2000. Not persuaded that Plaintiff's work history satisfied a "just cause" standard for termination, Angelo sustained Plaintiff's grievance and reinstated her employment. Due to the potential seriousness of her alleged errors, however, he did not award her back pay. *See* Dismissal Order at 3–5.

Dissatisfied with this outcome, Plaintiff filed the Complaint in this case on March 12, 2001. In her Complaint, Plaintiff alleges that she has suffered a violation under Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185(a). Specifically, she alleges that she was entitled to recover the lost wages denied her by the wrongful November 1, 1999 termination, and the misguided decision by the arbitrator reinstating her without back pay. Plaintiff claims that SEIU Local 399 breached its fiduciary duty to her by improperly representing her in the arbitration proceeding. She also attacks the propriety of the arbitration proceeding itself, and the remedy ordered by the Chair, as contrary to the CBA. *See* Dismissal Order at 6.

This was not the first complaint filed by this Plaintiff (or her counsel)[1] against the Medical Group, on the same or similar facts. On November 17, 2000, Plaintiff filed a previous complaint in which she asserted claims under the Americans with Disability Act ("ADA") and/or the California Fair Employment and Housing Act ("FEHA"), based on the Medical Group's alleged failure to accommodate Plaintiff's disability (a hearing impairment) and/or on its discriminatory discharge of her employment ("Truesdell I").[2] Rather than seeking leave of this Court to amend the prior complaint in Truesdell I (Case No. CV 00–12268 ABC (BQRx)), Plaintiff's counsel filed these LMRA claim(s) as a separate Complaint (this case: "Truesdell II"). Thus, the Court was given no initial opportunity to pass on the viability of these LMRA claim(s).

It appears that Plaintiff's counsel first asked counsel for the Medical Group to stipulate to amendment of the Truesdell I complaint to add the LMRA claim(s) to that ongoing case. However, Defendant's counsel, citing the perceived futility of such an amendment based on the frivolousness of the LMRA claim(s), responded, *inter alia,* in a March 9, 2001 letter which

---

**1.** Plaintiff is represented by (the Law Offices of) Jerome Zamos.

**2.** The first complaint ("Truesdell I") alleges that the asserted bases for Plaintiff's termination were a mere pretext for a discharge based on disability discrimination. It therefore similarly challenges the legality of Plaintiff's termination, and seeks what amount to the same damages (back pay) as are sought in this case ("Truesdell II").

refused to stipulate to the amendment. *See* Exhibit C to Motion for Sanctions ("March 9 Letter"). Defendant's counsel also reminded Plaintiff's counsel that the proper avenue for adding the LMRA claim(s) would be in a motion for leave to amend the Truesdell I complaint, giving this Court the opportunity to assess Plaintiff's claimed bases for relief, and Defendant's response. The March 9 Letter further informed Plaintiff's counsel that if he went forward with his (previously-communicated) plan to include the LMRA claim(s) in a separate case, Defendant would seek sanctions. *See id.*

Nonetheless, Plaintiff's counsel filed the instant action three days later, on March 12, 2001. His reason for doing so is allegedly based on his experience in a prior case before Judge Baird, in which a motion for leave to amend the complaint was denied (that opinion has not been provided to this Court). Counsel claims a possible statute of limitations prejudice as his justification for filing the Truesdell II Complaint. *See* Opposition to Motion for Sanctions at 10; *see also* Exhibit D to Motion for Sanctions (Zamos' March 9, 2001 responsive letter). Without access to the decision by Judge Baird in the prior case, the Court cannot gauge the reasonableness of counsel's belief that *based on that opinion* a new complaint (followed by consolidation) was the reasonable course. However, the Court does conclude that it would have been this Court's preference for counsel to seek to amend the prior (Truesdell I) complaint, rather than to file a new case.

On March 29, 2001, the Medical Group and SEIU Local 399 filed a joint motion seeking dismissal of the Truesdell II Complaint for its failure to state a proper "hybrid" Section 301/breach of the duty of fair representation ("DFR") claim. On April 18, 2001, without need for oral argument, the Court agreed, and dismissed the Complaint.[3]

On the same day the Medical Group filed its motion to dismiss, March 29, 2001, Defendant's counsel also served on Plaintiff's counsel a filing-ready copy of this Motion for Sanctions. *See* Declaration of Thomas R. Kaufman ("Kaufman Decl."). This was apparently preceded by discussions with Plaintiff's counsel in which Defendant's counsel made further efforts to demonstrate the futility of the LMRA claim(s), and also urged Plaintiff's counsel to withdraw the Truesdell II Complaint, to no avail. *See* Kaufman Decl. ¶ 10. Plaintiff's counsel does not dispute this basic sequence. *See* Declaration of Jerome Zamos ("Zamos Decl.") ¶¶ 11–15. However, rather than accede to Defendant's request to withdraw the Complaint, Plaintiff opposed the motion to dismiss.[4]

After garnering a dismissal of the Complaint in this case, and well past the 21–day safe harbor period required by Rule 11, Defendant filed the instant Motion for Sanctions (the "Motion") on April 23, 2001, originally noticed for a hearing on May 21, 2001. On May 7, 2001, Plaintiff's counsel opposed (the "Opposition"). Defendant filed its reply papers (the "Reply") on May 14, 2001. Also on May 14, 2001, the Court continued the hearing on the Motion to June 11, 2001.

In addition to this basic background in *this* case, Defendant's counsel also points,

---

**3.** Plaintiff was given until May 15, 2001 to file a First Amended Complaint ("FAC"), augmenting or amending the allegations in support of her hybrid Section 301/DFR claim. Plaintiff declined to file the FAC. A final judg-ment was entered by the Court on May 17, 2001.

**4.** Plaintiff's opposition to the motion to dismiss was filed on April 6, 2001, in the face of the already-served Motion for Sanctions.

as a further ground for an award of sanctions, to Plaintiff's counsel's alleged conduct in other cases brought and/or prosecuted against the Medical Group as a defendant. Claiming that Plaintiff's counsel has a "long history" of filing frivolous claims against the Medical Group, Defendant's counsel provides a list of six prior cases brought by Plaintiff's counsel on behalf of various other employees, all six of which ended in summary judgment in favor of the Medical Group. *See* Motion at 13–14. Plaintiff's counsel does not dispute these outcomes.[5] *See* Zamos Decl. ¶ 20. Of course, the Court draws no specific conclusion from these unsuccessful claims, except to note that there is also a history between these particular counsel.[6]

Of more note, however, is that in two of these cases Plaintiff's counsel was specifically taken to task for the frivolousness of the claims asserted. For instance, Plaintiff's counsel does not dispute that in the case of *Epstein v. Southern California Permanente Medical Group* (Case No. CV 95–08489 R), Judge Real not only granted summary judgment to defendant(s), but also made an award of over $60,000.00 in attorneys' fees payable by both plaintiff and attorney Jerome Zamos, a finding which has as a prerequisite the conclusion by Judge Real that the claims pressed under FEHA were frivolous and unreasonable.[7] This award apparently remains unpaid by Zamos. *See* Kaufman Decl. ¶ 10.

Even more troubling is an award of fees ordered by a state court in *Thowtho v. Southern California Permanente Medical Group* (L.A.S.C. No. BC 160864), and particularly Plaintiff's counsel's attempt to recharacterize the fate of that sanction, on appeal to the state court of appeal, to this Court. Plaintiff's counsel admits that an award of attorneys' fees was made against his client in *Thowtho,* pursuant to the authority of California Government Code § 12965. He also does not dispute that this award was based on the apparent frivolousness of the FEHA claim(s) brought. *See, e.g., Guthrey v. State of California,* 63 Cal.App.4th 1108, 1126, 75 Cal.Rptr.2d 27 (1998) (confirming that a prevailing defendant is entitled to fees under Section 12965 only where the plaintiff's claim was frivolous and/or unreasonably brought). However, counsel announces, somewhat triumphantly, that this sanction was reversed by the state court of appeal. *See* Opposition at 11; Zamos Decl. ¶ 40.[8]

---

5. Presumably, Plaintiff's counsel *does* dispute that these prior cases were brought on the basis of "frivolous" or unwarranted claims.

6. The Court cannot, for instance, assume that because these prior cases all ended in summary judgment, they were improperly brought.

7. Plaintiff's counsel's attempt to distinguish the authority for this award of fees, California Government Code § 12965, from an award under Rule 11, is clearly a distinction without a difference.

8. The California Court of Appeals decision in *Thowtho v. Southern California Permanente Medical Group* (Appellate Case No. B116420), was not published. However, it is attached as Exhibit A to Defendant's Reply brief, and will be herein referred to as the *"Thowtho* Appellate Decision."* Plaintiff's counsel insists that neither Defendant nor the Court should make any use of this opinion beyond noting the "reversal" of the award of attorneys' fees, due to its unpublished status. *See* Opposition at 11. However, it is Plaintiff's counsel who has made the representations as to the impact of the *Thowtho* Appellate Decision; he may not now be heard to complain when those representations are merely contradicted by citation to the actual opinion. Moreover, where the Court relies on this decision not for a proposition of law, but merely as a repository of certain facts relevant to the conduct of attorney Zamos in this and other courts, the Court is not "citing" the opinion, as such. For this limited purpose, the Court takes note of the case.

This is true, as far as it goes. However, Plaintiff's counsel neglects to mention that the *basis* for the reversal was the appellate court's conclusion that the client should not be held liable for fees incurred as a result of *Plaintiff's counsel's* very bad legal advice:

> In this case, at the summary judgment hearing, the trial court stated, "This is probably the least meritorious complaint that I have ever seen." Our review of the record confirms that the action was indeed groundless and without foundation. But appellant's counsel, Mr. Zamos, has argued consistently that the action was brought in reliance on his advice.... Mr. Zamos argued that punishing the client for following his attorney's advice would ... "only serve[] to discourage people from bringing these matters to court." In light of counsel's express acceptance of responsibility for deciding appellant's claims were meritorious and should be pursued, it was an abuse of discretion to penalize the client for bringing a frivolous lawsuit.

*Thowtho* Appellate Decision at 10–11. Therefore, it is indeed ironic that Plaintiff's counsel cites this "reversal" in his own defense. It was not based on any conclusion by the appellate court that the action had not been frivolous. It merely held counsel *personally* responsible (at his own suggestion) for the prosecution of the frivolous claim.[9]

Moreover, the appellate court then went on to consider whether in light of Plaintiff's counsel's performance in the case, it might have been appropriate to order sanctions under California Code of Civil Procedure § 128.7 (the equivalent of Rule 11 at the state level). It ultimately did not impose sanctions, but on wholly procedural grounds:

> In this case, the trial court found, and the record shows, that appellant's complaint was without merit, and was lacking in evidentiary support. Taken in conjunction with counsel's admission that the action was brought solely on his advice to appellant, the court could have found, in its discretion, that counsel violated [§ 128.7(b)(2)], by presenting claims, defenses or legal contentions not warranted by existing law, and [§ 128.7(b)(3)], by making allegations and factual contentions lacking in evidentiary support. [¶] There is, however, a statutory impediment to the imposition of sanctions. Respondents did not comply with the "safe harbor" provisions of section 128.7.... The trial court in this case denied sanctions ... In light of respondents' failure to follow the statute, we find no abuse of discretion in the court's decision.

*Thowtho* Appellate Decision at 12–13 (citations omitted).

Defendant also points, as a final basis for sanctions, to alleged "knowingly false factual representations" made by Plaintiff's counsel in the (Truesdell II) Complaint in this case. *See* Reply at 7. The allegations complained of are those in the Complaint which claim that SEIU Local 399 did not insist on procuring statistics allegedly kept by the Medical Group which would have shown that no one else had ever been discharged by the Medical Group for slide reading errors of the type leading to Plaintiff's discharge. *See id.*; Complaint ¶¶ 25–26 ("[D]espite the continuing request of PLAINTIFF, and persons acting on her behalf, that LOCAL 399 obtain statistical records from THE MEDICAL GROUP which would have demonstrated that no one ... had ever been terminated as a result of the types of errors which PLAINTIFF had allegedly made ... it made no attempt to either obtain or use those records ..."). Defen-

---

9. Counsel is not nearly so willing to assume responsibility here.

dant claims that Plaintiff's counsel *must* know that no such records showing a *lack* of termination for slide-reading errors could possibly exist, as this same counsel (Jerome Zamos) had previously represented another cytotechnologist-plaintiff (Syed Raza) also discharged, *inter alia,* for similar slide reading errors.

Attached as Exhibit F to the Motion for Sanctions is a complaint prepared by Jerome Zamos, on behalf of Syed Raza, filed on October 5, 1998 (*Raza v. Kaiser Foundation Hospitals,* Case No. CV 98–08084 AAH (RNBx)). *See* Exhibit F to Motion for Sanctions ("Raza Complaint"). This complaint was filed seeking to enforce an arbitration award, and the underlying arbitration dealt primarily with Raza's termination from his position as a cytotechnologist with the Medical Group for slide reading errors like those for which Plaintiff was discharged. Plaintiff's counsel cannot claim to have been unaware of the Raza case, or of the basis for his termination and subsequent grievance.

Indeed, in the October 19, 2000 arbitration decision issued by Chair Thomas Angelo regarding Plaintiff *Truesdell's* grievance, the prior Raza arbitration decision is discussed in some detail, and is clearly relied upon as a substantial precedent in the domain of the "just cause" standard as applied to termination of a cytotechnologist based on slide-reading errors only discovered through the five-year review mandated by federal laboratory standards. This decision was *attached* to Plaintiff's Complaint in this case. *See* Exhibit B to Complaint ("Truesdell arbitration decision") at 8, 11–13. This is further evidence that Plaintiff's counsel must have known not only that Raza had been previously *discharged* by the Medical Group from a cytotechnologist position for his slide reading errors, but also that the Raza decision was particularly *relevant* to Truesdell's grievance.

It was therefore disingenuous, at best, for Plaintiff's counsel to sign on to a Complaint asserting that the Medical Group must have statistics showing that "no one . . . had ever been terminated as a result of the types of errors which PLAINTIFF had allegedly made," and/or to claim that SEIU Local 399 ought to have *insisted on* those statistics for the purpose of Plaintiff Truesdell's defense. Nor is the Court impressed by Plaintiff's counsel's attempts to distinguish the facts or·the significance of the prior Raza action. *See* Zamos Decl. ¶¶ 28–36; Opposition at 8–9. If anything, these efforts only underscore Plaintiff's counsel's unwillingness to take responsibility for his actions, and to acknowledge the contradiction between what was claimed in the Complaint, and what he must have known at the time. He offers nothing to contradict the basic point that Raza was terminated, *inter alia,* on the basis of slide reading errors, before Truesdell was terminated for the same reason, and that he knew of this prior case.

## II. STANDARD FOR SANCTIONS UNDER RULE 11 AND/OR SECTION 1927

■ Rule 11 of the Federal Rules of Civil Procedure, and 28 U.S.C. § 1927, represent independent sources of authority for the imposition of sanctions by a federal court. Rule 11 is designed to deter attorneys and unrepresented parties from violating their certification that any pleading, motion or other paper presented to the court is supported by an objectively reasonable legal and factual basis; no showing of bad faith or subjective intent is required. Section 1927, on the other hand, is designed to deter attorney misconduct; the subjective intent of the attorney or unrepresented party is extremely relevant.

Rule 11 states, in pertinent part, that when an attorney or an unrepresented

party presents a signed paper to a court, that person is certifying that to the best of his or her "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—"

\* \* \* \* \* \*

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and]

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery ...

Fed. R. Civ. Pro. 11(b). Rule 11 permits a court to impose a sanction for any violation of these certification requirements, either upon the attorney or the party "responsible for the violation." Fed. R. Civ. Pro. 11(c)(2). This sanction should be "what is sufficient to deter repetition of such conduct or comparable conduct ..." *Id.* Where such sanctions are sought by motion, Rule 11 contains a "safe harbor" provision stating that a motion for sanctions may not be filed until 21 days after it is served. *See* Fed. R. Civ. Pro. 11(c)(1)(A). ■■■■ This "safe harbor" gives the party subject to the motion 21 days to withdraw the offending pleading and thereby escape sanctions. *See Barber v. Miller*, 146 F.3d 707, 711 (9th Cir.1998). The 21-day "safe harbor" period is an absolute prerequisite (unless some other period is established by a court) to a motion for sanctions brought by any party. This provision does not apply to bar court-initiated sanction proceedings; however, the court must issue an order to show cause and there are restrictions on the court's *sua sponte* sanctions authority (e.g., no monetary sanctions to an opposing party). *See id.*

■■■■ For a properly-presented motion, or on a court's own motion, Rule 11 is governed by an objective standard of reasonableness. *See, e.g., Conn v. CSO Borjorquez*, 967 F.2d 1418, 1420 (9th Cir.1992). "Rule 11 imposes a duty on attorneys to certify by their signature [10] that (1) they have read the pleadings or motions they file and (2) the pleading or motion is 'well-grounded in fact,' has a colorable basis in law, and is not filed for an improper purpose." *Smith v. Ricks*, 31 F.3d 1478, 1488 (9th Cir.1994). The court considering a request for Rule 11 sanctions should consider whether a position taken was "frivolous," "legally unreasonable," or "without factual foundation, even if not filed in subjective bad faith." *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir.1986); *see also Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362–65 (9th Cir. 1990) (en banc).

■■■■ "Our cases have established that sanctions [under Rule 11] must be imposed on the signer of a paper if either a) the paper is filed for an improper purpose, or b) the paper is 'frivolous.'" *Townsend*, 929 F.2d at 1362. Therefore, "[t]he issue in determining whether to impose sanctions under Rule 11 is whether a reasonable attorney, having conducted an objectively reasonable inquiry into the facts and law, would have concluded that

---

**10.** Though Rule 11 most often applies to signed papers "presented" to a court, later oral advocacy of positions set forth in pleadings or other papers is also sanctionable if those positions are known (or in the exercise of reasonable judgment should be known) to be unsupported in fact or law. *See, e.g., Bust-* *er v. Greisen,* 104 F.3d 1186, 1190 n. 4 (9th Cir.1997) (noting that the 1993 amendments to Rule 11 allow for sanctions for " 'presenting to the court (whether by signing, filing, submitting, or *later advocating* )' a document otherwise sanctionable").

the offending paper was well-founded." *Schutts v. Bently Nevada Corp.*, 966 F.Supp. 1549, 1562 (D.Nev.1997) (citation omitted). A finding of subjective bad faith is not required under Rule 11.[11] *See Smith*, 31 F.3d at 1488 ("Counsel can no longer avoid the sting of Rule 11 sanctions by operating under the guise of a pure heart and empty head."). Instead, the question is whether, at the time the paper was presented to the Court (or later defended) it lacked evidentiary support or contained "frivolous" legal arguments.

 Where such a violation is found, Rule 11 authorizes sanctions against persons—attorneys, law firms, or parties—responsible.[12] *See Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989).

 Rule 11 expressly authorizes the imposition of monetary and/or non-monetary sanctions. *See* Fed. R. Civ. Pro. 11(c)(2); *Weissman v. Quail Lodge, Inc.*, 179 F.3d 1194, 1198 (9th Cir.1999). A monetary sanction may be composed of either or both a penalty payable to the court, and/or an award of reasonable attorneys' fees to the opposing party for those "fees and other expenses incurred as a direct result of the violation." *See* Fed. R. Civ. Pro. 11(c)(2). A fee award may only be made "on motion and [if] warranted for effective deterrence." *Id.* Thus, "[i]t is critical ... that the sanctioning court embrace the overriding purpose of deterrence and mold its sanctions in each case so as to best implement that policy." *In re Yagman*, 796 F.2d 1165, 1184 (9th Cir.1986). Rule 11 is not designed as a fee-shifting provision or to compensate the opposing party. Its primary purpose is to deter sanctionable conduct. Thus, in addition to requiring that any fees be a direct result of the offending conduct, the court must consider the deterrent effect of any fee award. *See* Fed. R. Civ. Pro. 11(c)(2); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 406, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). Moreover, an award of fees is limited to fees "reasonably" expended as a result of an unwarranted filing. *See* Fed. R. Civ. Pro. 11(c)(2).

 A federal court may also base an order of sanctions on authority granted by 28 U.S.C. § 1927, which states, in pertinent part, that:

> Any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. Thus, "Section 1927 authorizes the imposition of sanctions against any lawyer who wrongfully proliferates litigation proceedings once a case has commenced." *Pacific Harbor Capital*,

---

**11.** Indeed, a complaint or other paper that is "well-grounded in fact and warranted by existing law" cannot be the basis for a Rule 11 sanction, regardless of the subjective intent of the person who filed it. *See Newton v. Thomason*, 22 F.3d 1455, 1463–64 (9th Cir.1994).

**12.** Rule 11 sanctions, because they are based on the certification inherent in the signature on papers presented to the court, are most often awarded against the attorney (or unrepresented party) who signed the unsupported filing. *See, e.g., Lockary v. Kayfetz*, 974 F.2d 1166, 1170 (9th Cir.1992). However, the court may also hold a represented party jointly and severally liable. *See* Fed. R. Civ. Pro. 11(c). In some cases, the represented party may be held personally responsible. *See, e.g., Pan–Pacific & Low Ball Cable Television Co. v. Pacific Union Co.*, 987 F.2d 594, 596 (9th Cir.1993). However, no monetary sanction may be imposed against a client personally for frivolous arguments of *law* (i.e., violation of Fed. R. Civ. Pro. 11(b)(2)). A fine, penalty, or order of fees for unwarranted certification of legal merit must be solely against the attorney(s). *See* Fed. R. Civ. Pro. 11(c)(2)(A).

*Inc. v. Carnival Air Lines, Inc.,* 210 F.3d 1112, 1117 (9th Cir.2000).

 In that Section 1927 requires that an attorney's multiplication of proceedings be *both* "unreasonabl[e]" *and* "vexatious[ ]," the conduct of the attorney in question must have been somehow wrongful.[13] "The imposition of sanctions under § 1927 requires a finding of bad faith." *Id.* "We assess an attorney's bad faith under a subjective standard. Knowing or reckless conduct meets this standard." *MGIC Indem. Corp. v. Moore,* 952 F.2d 1120, 1121–22 (9th Cir.1991); *see In re Keegan Mgmt. Co., Securities Litig.,* 78 F.3d 431, 435–36 (9th Cir.1996).[14] Thus, "counsel must have a culpable state of mind but its conduct need not be intentional: [a court] may only award sanctions where it finds that counsel acted with 'intent, recklessly, or in bad faith.' " *Baneth v. Planned Parenthood,* 1994 WL 224382, *3 (N.D.Cal.1994) (citations omitted). As is true for Rule 11, Section 1927 sanctions may be an award of reasonable attorneys' fees, but an attorney may be ordered to pay only *"excess"* costs resulting from improper conduct. *See Salstrom v. Citicorp Credit Svcs., Inc.,* 74 F.3d 183, 185 (9th Cir.1996).

## III. DISCUSSION

 The Court is cognizant of the fact that sanctions are not to be lightly granted, and that neither Rule 11 nor any other sanctioning authority should be used to "chill" creative advocacy or attorneys' enthusiasm in pursuing legal or factual theories. *See Greenberg v. Sala,* 822 F.2d 882, 887 (9th Cir.1987) (interpreting Rule 11); *see also Townsend,* 929 F.2d at 1363–64 (same). However, the Court must also be vigilant to ensure that its calendar does not become weighted down with frivolous claims and motions. "It is now clear that the central purpose of Rule 11 is to deter baseless filings in District Court and thus ... streamline the administration and procedure of the federal courts.... Although the Rule must be read in light of concerns that it will spawn satellite litigation and chill vigorous advocacy [citation], any interpretation must give effect to the Rule's central goal of deterrence." *Cooter & Gell,* 496 U.S. at 393, 110 S.Ct. 2447.

 In this case, the Court concludes that Plaintiff's counsel should be sanctioned under Rule 11 for his entire course of conduct in first filing the (Truesdell II) Complaint in this case in the face of the presentation by Defendant's counsel regarding the futility of the LMRA claim(s) presented therein, then refusing to withdraw the Complaint in the face of Defendant's counsel's subsequent efforts to demonstrate the frivolousness of Plaintiff's claims, and finally failing to take ad-

**13.** Because Section 1927 permits sanctions only for multiplication of proceeds, it also does not apply to claims in an initial complaint. In this respect, it is quite different from Rule 11. "The filing of a complaint may be sanctioned pursuant to Rule 11 or a court's inherent power, but it may not be sanctioned pursuant to § 1927." *In re Keegan,* 78 F.3d at 435. *But see Ridder v. City of Springfield,* 109 F.3d 288, 299 (6th Cir.1997). Another distinction from Rule 11 is that Section 1927 may not be used to impose sanctions on a represented party, even if the client is jointly and severally responsible for a sanctionable action. *See FTC v. Alaska Land Leas-*

*ing, Inc.,* 799 F.2d 507, 510 (9th Cir.1986). Courts are split on whether Section 1927 may be applied to an unrepresented *pro se* litigant, though the Ninth Circuit has allowed a Section 1927 sanction against a *pro se. See Wages v. Internal Revenue Service,* 915 F.2d 1230, 1235–36 (9th Cir.1990). *But see Sassower v. Field,* 973 F.2d 75, 80 (2d Cir.1992) (not allowing *pro se* sanction).

**14.** Under Section 1927, an attorney may be sanctioned even if the argument is meritorious, if conduct was in bad faith. *See New Alaska Development Corp. v. Guetschow,* 869 F.2d 1298, 1306 (9th Cir.1989).

vantage of the "safe harbor" period presented by the service of the filing-ready Motion for Sanctions, and opposing the motion to dismiss on the basis of wholly inapposite and inadequate authority. Without reaching whether sanctions would also be available under Section 1927, the Court concludes that an award of reasonable attorneys' fees under Rule 11 is necessary to deter comparable conduct in the future.

### A. Frivolous Legal Arguments in the (Truesdell II) Complaint

In the original Complaint in this case, and in the opposition to Defendants' motion to dismiss, both of which documents were signed by Plaintiff's counsel and presented to the Court, Plaintiff's counsel claimed that the union did not properly present her case, and/or that the arbitrator devised an improper remedy. However, as the Court made clear in its prior Dismissal Order, Plaintiff's counsel's contentions were based on a wholly unreasonable and specious interpretation of two provisions of the CBA governing Plaintiff's employment. *See* Dismissal Order at 15. Therefore, as a matter of basic contract interpretation the Complaint was not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed. R. Civ. Pro. 11(b)(2).

 Furthermore, the Dismissal Order went on to note that even if the Court were to find some reasonable basis for counsel's interpretation of these contractual provisions, Plaintiff would still be definitively unable to state a hybrid claim under LMRA Section 301 or DFR, due to the deference that is afforded to the exercise of a union's judgment in the prosecution/arbitration of member grievances. *See* Dismissal Order at 13–14, 16; *Salinas v. Milne Truck Lines, Inc.,* 846 F.2d 568,

569 (9th Cir.1988); *Castelli v. Douglas Aircraft Co.,* 752 F.2d 1480, 1482 (9th Cir. 1985); *Zumbrun v. Delta Airlines, Inc.,* 1996 WL 652718, *4 (C.D.Cal.1996). An allegation that a union failed to make some particular argument, and/or insist on some particular evidence being either admitted or excluded, in the course of an arbitration, simply fails to state a claim for breach of the DFR. *See Salinas,* 846 F.2d at 569; *Zumbrun,* 1996 WL 652718 at *4. Plaintiff's counsel presented absolutely no authority undermining this clear line of decisions.

Therefore, no reasonable attorney could have believed that there was a credible basis for a hybrid Section 301/DFR claim based on the interpretation of the CBA offered by Plaintiff's counsel, or based on the scope of the DFR expressed in controlling Ninth Circuit authority. Plaintiff's counsel's attempts to state a claim were therefore not objectively reasonable, and flew in the face of that clear authority.

Moreover, Plaintiff's counsel sought a form of relief to which Plaintiff would never have been entitled: a declaration of the proper interpretation of the CBA which, if granted, would have usurped the role of the arbitrator as the primary interpreter of a labor contract. *See* Dismissal Order at 18–20. Plaintiff's counsel also argued that the arbitrator exceeded his authority under the CBA in ordering the reinstatement of Plaintiff's employment *absent* back pay, without any acknowledgment of the clear line of authority specifying the broad discretion of the arbitrator not only in interpretation of the CBA, but also in the fashioning of remedies for any breaches thereof. *See* Dismissal Order at 18; *Assoc. Of Western Pulp & Paper Workers, Local 78 v. Rexam Graphic, Inc.,* 221 F.3d 1085, 1089–91 (9th Cir.2000).

Plaintiff's counsel relied on wholly inapposite authority dealing with appropriate

remedies for *unfair labor practices*, in support of these arguments about the impropriety of the arbitrator's decision. He continues to cite these cases despite the Court's Dismissal Order. *See, e.g.,* Opposition at 2 (citing *Darr v. NLRB*, 801 F.2d 1404 (D.C.Cir.1986)); Zamos Decl. ¶ 17 (citing *Halle Enterprises, Inc. v. NLRB*, 247 F.3d 268 (D.C.Cir.2001)). Counsel's continued reliance on this authority despite its clear inapplication to the facts of this case is a further justification for imposition of a sanction. No reasonable attorney could believe that this authority is relevant to this case.

### B. Additional Facts Warranting the Imposition of Sanctions

Rule 11 sanctions are therefore justified solely on the basis of Plaintiff's counsel's persistent prosecution of claims without any reasonable basis in the law. These sanctions are particularly proper given that Defendant's counsel gave Plaintiff's counsel at least three opportunities to withdraw these claims, and on each occasion cited to relevant authority demonstrating the speciousness of the Complaint.[15] Yet Plaintiff's counsel insisted on first filing and then defending the claims in the (Truesdell II) Complaint, without any reasonable basis in fact or law for believing that these claims had any merit.

Moreover, the imposition of sanctions is independently justified by Plaintiff's counsel's factual misrepresentations in the Complaint as to the existence of the Raza termination. The claim that the union ought to have insisted on the production of statistics showing that no other employee had been terminated for slide reading errors clearly implies that these "statistics" exist. However, Plaintiff's counsel himself *represented* a person (Raza) whose termination would make such "statistics" an impossibility. Thus, the Complaint fails Rule 11's requirement that "the allegations and other factual contentions have evidentiary support ..." Fed. R. Civ. Pro. 11(b)(3).

Further justifying the imposition of Rule 11 sanctions in this case is Plaintiff's counsel's history of prior sanctions, particularly his (mis)representations as to the scope and nature of that history. Though the prior sanctions themselves are not especially relevant to the Court's determination as to whether Plaintiff's counsel's conduct *in this case* warrants further sanctions under Rule 11 (except to the extent that they indicate that this particular attorney clearly does not take seriously the prohibition on presenting frivolous claims to the state and federal courts, and therefore should not be allowed to slide by without the deterrent effect of a new sanction), what is of *significant* relevance is Plaintiff's counsel's lack of acknowledgment of those sanctions, and deceptive description of this prior history. Plaintiff's counsel's disingenuous citation to the *Epstein* and *Thowtho* cases in his Opposition to the Motion for Sanctions, as well as in the supporting declaration filed therewith, is a further example of the sort of misleading and/or deceptive factual allegation warranting the imposition of sanctions under

---

**15.** Indeed, Defendant's counsel noted the "futility" of the claims in the (Truesdell II) Complaint even before it was filed, and further expressly warned Plaintiff's counsel that if these claims were made in a separate case rather than by amendment to the Truesdell I complaint, Defendant's counsel would seek sanctions. Though the Court does not base its imposition of sanctions on Plaintiff's counsel's decision to file the LMRA claim(s) in a separate case, it does note that not only would it have been preferable to file a motion for leave to amend the original (Truesdell I) complaint, but this would have prevented this needless multiplication of proceedings. In addition, it likely would have eliminated the need to impose these sanctions, as the Court would have had the opportunity to rule on the "futility" of this amendment.

Rule 11. *See* Opposition at 11; Zamos Decl. ¶¶ 39–41; *see also* Fed. R. Civ. Pro. 11(b)(3).

## C. An Award of Reasonable Attorneys' Fees Is A Necessary Deterrent

For a multitude of reasons, therefore, Plaintiff's counsel is guilty of sanctionable conduct in the prosecution of this case. He has manifestly and repeatedly violated the certification requirement of Rule 11.[16] It is clear that some form of sanction is necessary, in order to deter comparable conduct by Plaintiff's counsel in future. *See* Fed. R. Civ. Pro. 11(c)(2); *In re Yagman*, 796 F.2d at 1184–85.

The Court concludes that an appropriate sanction is reimbursement of those attorneys' fees and costs reasonably expended by Defendant as a result of this unwarranted filing (and defense thereof). This award is governed by normal considerations delimiting what constitutes a "reasonable" level of attorneys' fees and costs. *See, e.g., Super Power Supply, Inc. v. Macase Industrial Corp.*, 154 F.R.D. 249, 258 (C.D.Cal.1994); *In re Yagman*, 796 F.2d at 1183–85. Thus, the Court has an independent duty to determine the appropriate "lodestar" amount based on a reasonable hourly rate multiplied by a reasonable number of hours expended. *See, e.g., Van Gerwen v. Guarantee Mutual Life Co.*, 214 F.3d 1041, 1045 (9th Cir.2000). In this determination, the Court also keeps in mind the level of fees necessary to act as a deterrent.

▌ Here, Defendant seeks a total of $4,945.00 in attorneys' fees incurred as a direct result of Plaintiff's unwarranted filings. These are based on a billing rate of $215.00/hour for a sixth-year graduate from UCLA Law School, with four years of experience in employment law. This is a presumptively reasonable hourly billing rate, and it is this attorney's "usual and customary" rate. *See* Kaufman Decl. ¶ 18. The level of recovery sought is based on ten hours spent on the motion to dismiss, seven hours spent on the Motion for Sanctions, and a further six hours spent preparing for, traveling to, and appearing at hearings necessitated by Plaintiff's unreasonable litigation. These are all quite reasonable figures. Accordingly, the Court finds that the total sum of $4,945.00 ($215.00/hour × 23 hours) is a reasonable amount. It also finds that these costs were incurred as a direct result of the violation(s) of Rule 11 by Plaintiff's counsel. Finally, the Court concludes that holding Plaintiff's counsel personally liable for this amount will have a notable deterrent value, which is necessary here.

▌ At the hearing on June 11, 2001, Plaintiff's counsel argued, *for the first time* (this argument was not raised in his papers opposing the Motion for Sanctions), that this Court is "without jurisdiction" to order sanctions under Rule 11, due to alleged non-compliance with its 21–day "safe harbor" provision precipitated by the entry of this Court's Dismissal Order a few days prior to Defendant's filing of the instant Motion for Sanctions. Since neither Defendant nor this Court had been informed of this novel argument prior to the hearing, and in order to afford both parties a full opportunity to explore the issue of this Court's "jurisdiction" to order a Rule 11 sanction, the Court granted both parties leave to file supplemental briefs on this issue by no later than Friday, June 15, 2001. Both briefs were then timely filed. After consideration thereof, the Court finds no defect in its jurisdiction (or its authority under Rule 11) to order this sanction.

---

16. The Court does not reach the issue of Section 1927 sanctions.

Plaintiff's counsel, though his argument is not well-articulated, is apparently claiming that the Dismissal Order "cut off" the 21–day "safe harbor" period provided by Rule 11. The "safe harbor" provision of Rule 11 provides that a motion for sanctions thereunder "shall not be filed with or presented to the court unless, within 21 days after service of the motion ... the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." Fed. R. Civ. Pro. 11(c)(1)(A). The Advisory Committee Notes for the 1993 Amendments state that a motion for sanctions "is not ... to be filed until at least 21 days ... after being served. If, during this period, the alleged violation is corrected ... the motion should not be filed with the court.... a party will not be subject to sanctions ... unless, after receiving the motion, it refuses to withdraw that position [for which sanctions are sought]."

It is undisputed that Plaintiff's counsel was served with the Motion for Sanctions on March 29, 2001, and that the Motion was not filed until April 23, 2001, 25 days later and well past the 21–day "safe harbor" period provided by Rule 11. Plaintiff's counsel also does not dispute that Defendant's counsel provided him with more than one written warning of the frivolousness of his claims even prior to service of the filing-ready Motion for Sanctions on March 29, 2001. It is therefore clear that Defendant's counsel complied with both the spirit and the letter of Rule 11's "safe harbor," and gave Plaintiff's counsel an ample opportunity to withdraw the Truesdell II Complaint.

Plaintiff's counsel never took advantage of this opportunity. He argued the viability of the claims in the Truesdell II Complaint in opposition to the motion to dismiss. He has continued to defend these claims since that time. Indeed, on May 16, 2001, he filed an appeal of this Court's Dismissal Order to the Ninth Circuit Court of Appeals. Even at the June 11, 2001 hearing on the instant Motion for Sanctions, Plaintiff's counsel vigorously defended the Truesdell II Complaint. Never once has he indicated any intent to withdraw the Complaint, or even acknowledged the speciousness of the claims asserted therein.

Plaintiff's counsel argues, nonetheless, that Defendant's counsel failed to give him a "safe harbor." His claim, however illogical, is literally that service of the Motion for Sanctions on March 29, 2001 was "not timely" because the Dismissal Order was filed on April 18, 2001, less then 21 days thereafter. See Supplemental Brief filed June 14, 2001 at 2–3. Though his argument is not entirely clear, it seems that Plaintiff's counsel argues that his "chance" to avoid sanctions by withdrawing the Truesdell II Complaint was "cut off," before the lapse of the 21–day "safe harbor" following service of the Motion.

On this basis, Plaintiff's counsel claims that this Court "does not have jurisdiction to consider" the Motion for Sanctions. *Id.* at 3. However, this argument has no more merit than did the Truesdell II Complaint. For several reasons, the Court rejects counsel's claim.

First, the plain text of Rule 11 simply states that no motion for sanctions thereunder may be *filed* unless the moving party has, first, served the opposing party with the motion, and second, afforded that party a period of at least 21 days within which to rescind whatever document or claim is the subject of the motion. The text of the rule is clearly directed at the procedural requirements for the *filing* (and acceptance) of the motion. Here, Defendant's counsel gave Plaintiff's counsel more than 21 days to withdraw the Truesdell II Complaint, by serving the Motion for Sanctions 25 days prior to its filing.

On its face, this conduct clearly satisfies Rule 11's procedural minimums.[17]

Second, the purpose of the "safe harbor" provision is to afford an opposing party a reasonable period to reconsider an apparently or arguably frivolous claim or other filing. Plaintiff's counsel cannot claim that he was not given ample opportunity to do so. Nor can he claim that he ever evinced any intent to take this opportunity.

Third, to the extent that Plaintiff's counsel claims that the Court's "premature" decision on the motion to dismiss "cut off" the "safe harbor" period prior to its expiration (i.e., that the Dismissal Order foreclosed counsel's opportunity to "withdraw" the Truesdell II Complaint), there are at least two problems with this argument. One, Plaintiff's counsel has never said, or even implied, that he was "just about" to withdraw the Truesdell II Complaint, and that "but for" the Court's Dismissal Order he would have been able to escape sanctions by running to the courthouse sometime before the expiration of the 21–day "safe harbor" period (which, based on March 29, 2001 service, expired on April 19, 2001). Indeed, Plaintiff's counsel has shown absolutely no inclination to give up these claims, either before this Court or on appeal. He therefore cannot claim that he "lost an opportunity" to take an action he clearly never intended to take. Two, even if the Court considered its Dismissal Order to have "foreclosed" counsel's "opportunity" to withdraw the Truesdell II Complaint, that Order was not entered until April 19, 2001, which is also the earliest it might have been received by Plaintiff's counsel. This was the twenty-first day following service of the Motion for Sanctions. Therefore, the Dismissal Order could have no impact on at least Plaintiff's counsel's *perceived* ability to withdraw the Complaint, and avoid sanctions.

Finally, neither of the cases relied upon by Plaintiff's counsel stand for the proposition that Rule 11 sanctions are improper here. In *Hutchinson v. Pfeil*, 208 F.3d 1180, 1183–85 (10th Cir.2000), the court found Rule 11 sanctions inappropriate where the district court acted *sua sponte*, without giving the sanctioned party notice and an opportunity to be heard. In *Barber*, 146 F.3d at 710–11, the Ninth Circuit disallowed sanctions on a motion *first served after dismissal*.

This situation is entirely different. Plaintiff's counsel was given ample opportunity to avoid sanctions; he declined that chance. Therefore, the Court GRANTS Defendant's Motion for Sanctions, in its entirety. The Court further ORDERS Plaintiff's counsel, JEROME ZAMOS, to pay $4,945.00 in reasonable attorneys' fees to Defendant SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP by no later than thirty (30) days from the date of entry of this Order. Plaintiff's counsel shall be personally liable for this entire amount, and because it arises from counsel's frivolous legal claims (and unsupported factual contentions)

---

**17.** It is certainly not Defendant's fault that the Dismissal Order was filed (April 18, 2001) and entered (April 19, 2001) several days prior to Defendant's filing of the Motion for Sanctions on April 23, 2001. The motion to dismiss was originally noticed for a hearing on April 23, 2001 (the same day the Motion for Sanctions was filed). It was only because of the patent meritlessness of Plaintiff's Complaint that the Court granted the motion to dismiss without oral argument, in advance of the scheduled hearing date. As Defendant's counsel stated at the June 11, 2001 hearing, it was his intent in serving the Motion for Sanctions on March 29, 2001 to allow a more-than-adequate "safe harbor" period before the scheduled hearing on the Motion to Dismiss. The Court essentially "short-circuited" Defendant's timeline when it decided the motion to dismiss in Defendant's favor prior to that date.

Plaintiff's counsel may not pass these costs on to Plaintiff.

## V. CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff's counsel has committed numerous violations of Rule 11. To deter the repetition of this conduct in the future, the Court finds that it is necessary to sanction Plaintiff's counsel, by ordering him personally to reimburse Defendant for the unnecessary legal fees incurred as a result of his sanctionable conduct. Accordingly, the Court GRANTS the Motion for Sanctions, and hereby ORDERS Plaintiff's counsel, JEROME ZAMOS, to pay Defendant SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP its reasonable attorneys' fees of $4,945.00 within thirty (30) days of the date of entry of this Order. Plaintiff's counsel may not shift the cost of these fees to Plaintiff, or otherwise avoid their payment.